The UNITED STATES ex rel. Michael
G. NEW, Petitioner,

v.

William PERRY and Togo
West, Respondents.

Civil A. No. 96–0033 PLF.

United States District Court,
District of Columbia.

March 28, 1996.

---

492

Michael P. Farris, Purcellville, VA, Herbert W. Titus, Troy A. Titus, P.C., Virginia Beach, VA and Ronald D. Ray, Crestwood, KY, for petitioner.

Robert Shapiro, Assistant U.S. Attorney, Washington, DC, for respondents.

## OPINION AND ORDER

FRIEDMAN, District Judge.

Army Specialist Michael G. New voluntarily enlisted in the United States Armed Forces for an eight year term, four of which were to be served in the "Regular component of those forces," beginning on February 18, 1993. Pet.'s Ex. A, Enlistment Agreement. On January 13, 1996, just under three years after he reported for duty, Specialist New asked this Court to halt pending court martial proceedings against him and to remove him from the jurisdiction of the military justice system. The court martial concerned Michael New's refusal to comply with an order to appear in military formation on October 10, 1995, wearing a United Nations' cap and shoulder patch on his uniform in preparation for deployment as a member of a United Nations Peacekeeping Force in the former Yugoslav Republic of Macedonia. Pet.'s Ex. E, Charge Sheet.

Specialist New refused to obey the order because he contended that it was unlawful for him to wear the badges or accept the office of a foreign government. He sought an emergency stay of the court martial in this Court, arguing that the combination of wearing United Nations' accouterments on his uniform, carrying United Nations' identification, serving under United Nations' operational control and being subject to new codes of conduct and protections would transform him from his status as a member of the United States Armed Forces into that of a member of a United Nations force. Imposing this transformation in status upon him, he argued, breached his enlistment contract and, as a result of the breach, restored him to civilian status, making him no longer subject to court martial. Specialist New also contended that the order deploying him to the Republic of Macedonia was illegal because the United Nations Participation Act of 1945, as amended, 22 U.S.C. § 287, does not permit the President of the United States to deploy troops to serve under foreign command without the consent of Congress. In addition to his motion for an emergency stay of the court martial, Specialist New petitioned the Court for a writ of habeas corpus and an honorable discharge from the Army.

The Court refused to interrupt the court martial proceeding and denied the motion for a stay. It now considers Specialist New's petition for a writ of habeas corpus.

## I. BACKGROUND

Michael G. New reported for active duty on February 18, 1993. Pet.'s Ex. A. He received basic training at Fort Leonard Wood, Missouri, and Medical Specialist training at Fort Sam Houston in Houston, Texas. Thereafter, Specialist New was assigned to Fort Bliss, Texas, and deployed for two months to Kuwait. In July 1995, Specialist New was assigned to the Federal Republic of Germany as a Medical Specialist.

On August 21, 1995, Specialist New was informed that his unit was to be deployed in October 1995 to the Republic of Macedonia as part of a United Nations Peacekeeping Force. Members of his unit were told that they would be required to wear the shoulder patch and headgear of the United Nations throughout the deployment. Specialist New, believing the order was unlawful, informed his squad leader and platoon leader that he would not wear U.N. insignia until he was provided with constitutional authority for the order.

Specialist New was ordered to examine the United Nations Charter, its history and objectives and to rethink his position. On September 6, 1995, he was counseled by three non-commissioned officers in his chain of command. He was informed that the U.N. arm patch and headgear served to distinguish United States soldiers from warring factions in the Republic of Macedonia and that he would be subject to discipline if he disobeyed the order to wear such accouterments. Resp.'s Exs. 1–4, Counseling Reports. On September 19, 1995, Specialist New submitted a statement to superior officers in his chain of command indicating that he viewed the U.N. Charter to be inconsistent with the United States Constitution and his oath of enlistment. He wrote in relevant part:

> 2. ... I interpret the wearing of a uniform, or the accouterments of a uniform, as a sign of allegiance and faithfulness to the authority or power so signified or which issues that uniform. I am an American who was recruited for and voluntarily joined the U.S. Army to serve as an American soldier. I am not a citizen of the United Nations. I am not a United Nations Fighting Person. I have never taken an oath to the United Nations, but I have taken the required oath to support and defend the Constitution of the United States of America.
>
> 3. I am not trying to avoid a difficult or dangerous assignment or to get out of the Army. I served in Kuwait last year and have offered to serve anywhere in the world, in my American uniform, in the capacity as a U.S. Army medic under American command and U.S. Constitutional protections. I have worked diligently to be a good soldier, and have received early promotion and recognition for my efforts.... In order to avoid controversy or to avoid placing the Army in a bad light, I have requested a transfer to a unit that is not required to wear the U.N. uniform. I was told that such was not possible and I was even reluctantly willing to accept an honorable discharge, and I was willing to sadly and reluctantly withdraw from the U.S. Army quietly. That request was also denied. However, I will not wear a UN [sic] uniform or serve under UN [sic] Command, and I will strongly contest any discharge that is less than honorable.

Pet.'s Ex. C, Statement of Michael New.

On October 2, 1995, Specialist New and the rest of his battalion attended an "Information Briefing" on the legal bases for the deployment of American troops to the former Yugoslav Republic of Macedonia as part of the United Nations Peacekeeping Force. The soldiers who were being deployed to the Republic of Macedonia were ordered to appear in formation on October 10, 1995, in the uniform specified for the deployment, i.e., bearing U.N. arm patches and headgear. Resp.'s Ex. 5, Statement of Stephen Layfield. That order was repeated at a military company formation on October 4, 1995. Resp.'s Ex. 6, Statement of Roger H. Palmateer.

Specialist New appeared in formation on October 10, 1995, but did not wear the prescribed uniform. He was charged with failing to obey a direct, lawful order, a violation of Article 92 of the Uniform Code of Military Justice. Pet.'s Ex. E, Charge Sheet. Specialist New was arraigned on November 17, 1995. He moved to dismiss the charges against him, arguing that the order was unlawful and raising many of the same arguments contained in his petition for a writ of habeas corpus. *See* Pet.'s Exs. H and J, Memoranda in Support of Motion to Dismiss. On January 16, 1996, he moved in this Court for an emergency stay of the court martial and petitioned for a writ of habeas corpus. The Court heard oral argument and denied the motion for a stay because the novelty of Specialist New's arguments led the Court to conclude that Michael New was unable to demonstrate a likelihood of success on the merits of his petition, because he was unable to demonstrate any risk of irreparable harm and because the public interest clearly lay in permitting the court martial proceeding to go forward. Memorandum Opinion and Order of January 16, 1996.

After a court martial proceeding on the merits, Specialist New was sentenced to a bad-conduct discharge. Resp.'s Exs. 8 and 9, Findings and Sentence Worksheets. Review of the court martial decision by the Army Court of Criminal Appeals has not yet occurred. After that appeal, Specialist New may seek discretionary review in the Court of Appeals for the Armed Forces, which is composed of civilian judges, and, possibly, in the United States Supreme Court (although the Supreme Court will not consider a petition for certiorari if the Court of Appeals for the Armed Forces denies the petition to review). In the meantime, Specialist New remains on active duty, is not incarcerated and continues to receive his standard pay. Resp.'s Ex. 10, Declaration of Gregory T. Baldwin; Resp.'s Ex. 11, Affidavit of Chris Cassin. He is working, however, as a file clerk rather than as a Medical Specialist.

Specialist New seeks dismissal of the charges against him on the grounds that the unlawful orders changed his status such that he is a civilian and not subject to court martial. He seeks a release from the remaining five years of his term of enlistment by way of an honorable discharge from the Army. The United States insists that Specialist New is a member of the Armed Forces until the Army releases him from his commitment and that the Court therefore should refrain from dealing with the merits of petitioner's arguments and let the military justice system proceed unhindered.

## II. JURISDICTION

■ Article I of the Constitution authorizes Congress to subject persons in the military to trial by court martial for military offenses. *Toth v. Quarles,* 350 U.S. 11, 14, 76 S.Ct. 1, 3, 100 L.Ed. 8 (1955). Military courts "have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights." *Burns v. Wilson,* 346 U.S. 137, 142, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1953). Civilians, however, are entitled to have the benefit of additional safeguards afforded those tried in civil courts authorized by Article III of the Constitution. Civilians may not be subjected to trial by court martial. *Toth v. Quarles,* 350 U.S. at 23, 76 S.Ct. at 8; *McElroy v. Guagliardo,* 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960).

Army Specialist New concedes that he "submitted himself personally to the jurisdiction of the military courts by signing the United States Armed Forces Enlistment Contract and entering into active duty as a member of the nation's armed forces." Pet.'s Mem. in Support of Pet. at 8. He contends, however, that the military no longer has any authority over him because the Army tried to transform him into a United Nations soldier when it ordered him to wear United Nations' insignia on his uniform, carry a United Nations' identity card and serve as a member of the United Nations Peacekeeping Force. He says that those orders effected a breach of his enlistment contract and changed his status from U.S. military to civilian, thereby depriving the military courts of jurisdiction. He further contends that the orders are unlawful because the acceptance of the emblems and office of a foreign government is prohibited by the United States Constitution,

federal statutes and regulations, and because the President of the United States is prohibited by the United Nations Participation Act from deploying United States troops to serve in a foreign force unless he obtains the consent of Congress (which has not been obtained here).[1] As a result of the alleged breach, and restoration to civilian status, he maintains that he is being unlawfully retained in the United States Armed Forces and is entitled to habeas corpus.

■ Specialist New brings this habeas corpus action under 28 U.S.C. § 2241. A petition for a writ of habeas corpus is recognized as an appropriate remedy for servicemen who claim to be unlawfully retained in the Armed Forces. *Parisi v. Davidson*, 405 U.S. 34, 39, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972). The United States does not deny that the Court would have habeas corpus jurisdiction, but argues that principles of equitable jurisdiction counsel against the Court accepting jurisdiction until after the military justice system has finished reviewing Specialist New's court martial conviction.

The military justice system was established pursuant to Article I of the United States Constitution and is governed by the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 801, *et seq.* In enacting the UCMJ,

> Congress attempted to balance ... military necessities against the equally significant interest of ensuring fairness to servicemen charged with military offenses, and to formulate a mechanism by which these often competing interests can be adjusted. As a result, Congress created an integrated system of military courts and review procedures, a critical element of which is the Court of Military Appeals, consisting of civilian judges "completely removed from all military influence of persuasion," who would gain over time thorough familiarity with military problems.

... [I]mplicit in the congressional scheme embodied in the Code is the view that the military court system generally is adequate to and responsibly will perform its assigned task.

*Schlesinger v. Councilman,* 420 U.S. 738, 757–58, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591 (1974). Military courts are able to respond to the peculiar character of the military which, in order to "prepare for and perform its vital role, ... must insist upon a respect for duty and a discipline without counterpart in civilian life." *Id.* at 757, 95 S.Ct. at 1313; *see Chappell v. Wallace,* 462 U.S. 296, 300, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1982); *Parker v. Levy,* 417 U.S. 733, 743, 94 S.Ct. 2547, 2556, 41 L.Ed.2d 439 (1953).

■ The creation of a military tribunal does not divest the Article III civil courts of any portion of their statutory jurisdiction. *Schlesinger v. Councilman,* 420 U.S. at 745, 95 S.Ct. at 1306. Although valid final decisions of a military court are not subject to direct review in an Article III court, *id.* at 746, 95 S.Ct. at 1307, such decisions may be collaterally attacked by means of a petition for a writ of habeas corpus, such as the one filed here. The fact that the Court may have habeas corpus jurisdiction, however, does not mean that it should prematurely address the merits of a claim and thereby end the military proceedings. The Court must consider whether the exercise of its remedial power is consistent with principles of equitable jurisdiction.

The Supreme Court has held that the necessity of respect for coordinate judicial systems, a principle known as comity, dictates that "when a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system, the federal district courts must refrain from intervention...." *Schlesinger v. Councilman,* 420 U.S. at 758, 95 S.Ct. at 1313; *see Chappell v. Wallace,* 462 U.S. at 300, 103 S.Ct. at 2366 ("Civilian courts must, at the very least, hesi-

---

1. The parties agree that the legality of the order under the United Nations Participation Act may turn on whether the deployment to Macedonia is under Chapter VI (noncombatant assistance) or Chapter VII (armed forces) of the United Nations Charter. *Compare* 22 U.S.C. § 287d (Chapter

VII) *with* 22 U.S.C. § 287d–1 (Chapter VI). President Clinton has stated in a letter to the Speaker of the United States House of Representatives that the Macedonia operation is brought under Chapter VI and thus does not require congressional approval. Resp.'s Ex. 15.

tate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers."). Deference by the federal court avoids friction between the two court systems and may avert unnecessary or duplicative proceedings in the event the military outcome obviates the need for judicial intervention.

■ Specialist New concedes that a federal court generally would permit court martial proceedings to proceed unhindered, but argues that this case calls for an exception because (1) there is a substantial question concerning his status as a member of the military; (2) the relief he seeks in federal court is unavailable in the military tribunals; and (3) there is no special expertise in the military to resolve the issues raised in this case.[2]

Specialist New tries to escape military prosecution principally by claiming that his status has been involuntarily transformed from military to civilian as a result of the Army's unlawful orders to wear U.N. insignia and other accouterments and to deploy his unit to Macedonia under U.N. Command without congressional approval. He acknowledges that his claim is novel. He nevertheless contends that the substantiality of the military's breach of his enlistment contract justifies this Court's intervention despite the principles of comity just discussed.

There certainly are cases in which the civil courts have considered whether individuals fell within the jurisdiction of the military justice system even though addressing the issue appeared to preempt the military's jurisdiction. In *Reid v. Covert*, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957), the Supreme Court addressed whether *the spouse of a soldier* may be court martialed. In *McElroy v. Guagliardo*, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960), the question was whether a *civilian employee* of the military may be court martialed. These cases are inapposite. The individuals who were the targets of the courts martial in *Reid v. Covert* and in *McElroy v. Guagliardo* had never submitted themselves to the jurisdic-

tion of the military courts because they had never become members of the military. Thus, in those cases the Constitution prohibited the exercise of military authority over the individuals. *See Reid v. Covert*, 354 U.S. at 21, 77 S.Ct. at 1232–33; *McElroy v. Guagliardo*, 361 U.S. at 284–85, 80 S.Ct. at 307–08. Specialist New's situation is plainly different because, as even he concedes, he submitted to the jurisdiction of the military tribunals by enlisting in the Army.

In *Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), the Supreme Court considered whether a *former* serviceman—a man who had once submitted to the authority of the military justice system and was being prosecuted for conduct that occurred during his military service—could be court martialed. In *Toth* the individual who was targeted by military authorities was not a member of the military at the time the military sought to prosecute him. The Supreme Court considered the history behind the establishment of military courts and concluded that prosecution of a former soldier who had completely and officially severed his links with the military did not require "a prompt, ready-at-hand means of compelling obedience and order." *Toth v. Quarles*, 350 U.S. at 22, 76 S.Ct. at 8. Specialist New's disobedience of orders relating to the wearing of appropriate gear and deployment, on the other hand, is directly related to the military's being ready to fight or defend and, thus, directly implicates the traditional bases for court martial jurisdiction. Accordingly, *Toth v. Quarles* does not provide any support for this Court's preempting military jurisdiction.

The case that is conceptually closest to that of Specialist New is *Parisi v. Davidson*, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). In *Parisi*, upon which Specialist New places principal reliance, a soldier applied for discharge from the Army as a conscientious objector and was proceeding through an established administrative process set up for those claiming conscientious objector status. He petitioned for a writ of habeas corpus before the Army finished re-

---

2. At oral argument, petitioner seemed to recede from this third point, noting, through counsel,

that he was not questioning the legal or personal competence of the military judges.

viewing its initial rejection of his claim. The district court retained jurisdiction over the habeas action, but declined to consider the merits of the petition because the Army had not completed its administrative consideration of the conscientious objector claim. The soldier then received orders to be deployed to Vietnam. He applied for a stay to permit the consideration of his habeas corpus petition, but it was denied. The soldier refused to comply with the deployment order and a court martial was commenced. In the meantime, the Army finished reviewing its denial of the soldier's conscientious objector claim and again denied him conscientious objector status. Although the soldier had now exhausted his administrative remedies, the federal district court stayed consideration of the still unresolved habeas petition because of the now pending court martial proceeding. The soldier then was convicted of disobeying the order deploying him to Vietnam. The Ninth Circuit affirmed the district court's refusal to reach the merits of the habeas petition, but the Supreme Court reversed.

The Supreme Court explained that the issue was whether in light of the mere fact that a court martial proceeding was pending, a federal district court should postpone adjudication of an independent civil lawsuit based on a separate administrative determination clearly within its jurisdiction. *Parisi v. Davidson*, 405 U.S. at 41, 92 S.Ct. at 819. The Court noted that exhaustion doctrines were not relevant because the soldier had fully complied with Army administrative procedures. *Id.* at 40, 92 S.Ct. at 819. The only circumstance that was preventing consideration of the habeas petition was the fact that a court martial proceeding relating to Parisi's failure to follow orders had been instituted while his conscientious objector claim was pending determination. Thus, the relevant issue to consider was comity.

The Court in *Parisi* determined that deference to the military by the district court on grounds of comity was not appropriate because there was no issue relating to "a federal district court's direct intervention in a case arising in the military court system." *Parisi v. Davidson*, 405 U.S. at 41, 92 S.Ct. at 819–

20. The habeas corpus petition related to the final administrative determination of Parisi's conscientious objector claim, a matter "independent of the military criminal proceedings," *id.*, and not to the pending court martial for failure to follow orders. Procedurally, Specialist New comes to this Court in the latter situation, not the former. Specialist New argues that he has done all that he could do informally, but this argument is unavailing. The fact is that there *are* formal procedures to determine conscientious objector status, and it has long been established that the exhaustion of those procedures entitles one to habeas corpus consideration by an Article III court. *Id.* at 34, 92 S.Ct. at 815. In permitting a serviceman claiming conscientious objector status who has exhausted all administrative remedies to proceed by way of habeas corpus, the court in *Parisi* did "no more than recognize the historic respect in this Nation for valid conscientious objection to military service." *Id.* at 45, 92 S.Ct. at 822.

Unlike the situation in *Parisi*, there are no such formal procedures available for claims like those of Specialist New, and for good reason. His claim is novel, indeed, unprecedented. Unlike in *Parisi*, the asserted status change on which Specialist New relies is a virtually unheard of claim. The consequences of holding that a serviceman or woman on active duty can unilaterally escape military jurisdiction by raising such a novel argument concerning his or her status as a member of the military could be disruptive to military discipline, obedience and confidence. To accept Specialist New's claim would be to undermine the presumption of lawfulness that attaches to orders ultimately emanating from the Commander-in-Chief to put U.S. soldiers at risk on foreign soil, and to the established procedure, a court martial, to test their lawfulness in the first instance. By contrast with *Parisi*, the Army has not yet had an opportunity to consider Specialist New's contention. Nor has either the Congress or the military established separate administrative mechanisms to do so. Absent other considerations, the Supreme Court's decisions in *Parisi* and *Councilman* require this Court to stay its hand.

The next question is whether, as Specialist New suggests, *Parisi* recognized a general status exception beyond the specific unique status of a conscientious objector that would justify intervention by an Article III court before the court martial proceedings and appeals have run their course. Even if Specialist New is correct that new uniforms, new rules and new commanders would change his status into that of a United Nations soldier, his claim has not yet ripened. Specialist New has not worn the United Nations shoulder patch or the United Nations cap; he has not carried into the Republic of Macedonia the United Nations identity card; he has not been subject to United Nations operational control or new codes of conduct or protections. The compelled transformation of Michael New from a United States Army Specialist into a United Nations soldier has not occurred. While petitioner's counsel have argued that his status changed on October 10, 1995 when he was supposed to fall out in a United Nations uniform, or that his status changed when the Army ordered him to do so, the fact is that, in their words, he "refused to let this happen." He did not wear the U.N. uniform or insignia to the October 10 formation. Had he done so, his change of status argument under *Parisi* might have more force. His refusal to do so maintains his status as a member of the United States Armed Forces subject to court martial proceedings in which he can test the lawfulness of the order he refused to obey.

It is an even more tenuous stretch to suggest that Specialist New's status changed from military to civilian. Even if ultimately there is merit to the argument that the orders given to Specialist New were unlawful because they changed his responsibilities and allegiances from U.S. to U.N., the Court would find it difficult to conclude that such changes transformed Specialist New's status from U.S. military to civilian. As the Supreme Court explained in *United States v. Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890), a United States Armed Forces enlistment contract is a special sort of contract because "it is one of those contracts which changes the status, and where that is changed, no breach of the contract destroys the new status or relieves from the obli-

gations which its existence implies." *Id.* at 151, 11 S.Ct. at 55; *see Bell v. United States*, 366 U.S. 393, 402, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961); *United States v. Williams*, 302 U.S. 46, 58 S.Ct. 81, 82 L.Ed. 39 (1937). Likening enlistment to a contract of marriage, the Court recognized that "a breach of [the obligations of mutual faithfulness] does not destroy the status or change the relation of the parties to each other." *United States v. Grimley*, 137 U.S. at 152, 11 S.Ct. at 55. Because efficiency and confidence are crucial to the functioning of the military, public policy requires that military status should not be disturbed unless "there be in the nature of things some *inherent vice in the existence of the relation*, or natural wrong in *the manner in which it was established* ...." *Id.* at 153, 11 S.Ct. at 55 (emphasis added).

Specialist New does not allege that there was any "natural wrong" in the manner in which his relationship with the military was established through the enlistment contract. Thus, this case is unlike those in which federal courts have invoked their jurisdiction to determine if Army representatives made material misrepresentations to an enlistee or because of some other defect in the formation of the contract. *See, e.g., Pence v. Brown*, 627 F.2d 872 (8th Cir.1980); *Bonnet v. Byers*, 603 F.2d 85 (9th Cir.1979); *Brown v. Dunleavy*, 722 F.Supp. 1343 (E.D.Va. 1989); *Novak v. Rumsfeld*, 423 F.Supp. 971 (N.D.Cal.1976).

Nor is there "some inherent vice in the existence of the relation[ship]" between the U.S. Army and Specialist New. He has not yet been transformed from his status as a member of the United States Armed Forces or broken any law or regulation by accepting the badges or office of a foreign nation. He currently is involved in a proceeding during which he can challenge the military's jurisdiction over him and the legality of the Army's order. If he is dissatisfied with the military tribunals' resolution of his case, then he may seek collateral review in the civil courts. While the matter is pending, Specialist New remains on active duty with the United States Armed Forces and is receiving his standard pay, clear indicia that his status

has not changed even if, as he asserts, his enlistment contract has been breached. *See Bell v. United States*, 366 U.S. at 401–02, 81 S.Ct. at 1235–36. So long as Specialist New is being granted the process to which he is entitled as a member of the military, there is no "inherent vice" in the continuation of his military status. Petitioner's interpretation of *Parisi* does not trump the Supreme Court's decisions in *Grimley, Bell,* and *Williams.*

Finally, Specialist New argues that *Parisi* provides support for his position because the Supreme Court in *Parisi* also observed that even if the serviceman there had successfully defended himself at the court martial, success in his court martial would not have led to the discharge from military service that he sought through the conscientious objector proceeding. *Parisi v. Davidson*, 405 U.S. at 42–43, 92 S.Ct. at 820–821. Specialist New relies on the unavailability through the court martial of the relief he seeks, an honorable discharge from military service, as the reason why he can seek redress in this Court now. But Specialist New's request for an honorable discharge as his ultimate relief comes late. He originally requested rescission of the assertedly unlawful order or transfer to another unit to avoid having to wear United Nations accouterments. Pet.'s Ex. C, Statement of Michael New. And he was "reluctantly willing to accept an honorable discharge, and to sadly and reluctantly withdraw from the U.S. Army quietly" only as a fallback from the relief he really wanted. *Id.* at ¶ 3.

It was not until oral argument in this Court that Michael New abandoned his request for rescission of the orders or transfer to another unit, stating for the first time that he no longer wished to serve in the military, seeking only an honorable discharge. This change of decision occurred, he said, because now he believes that if he remains in the military these proceedings will be a badge of infamy and he will be scorned. The infamy and scorn he fears, however, may be an inevitable consequence of being a member of the Armed Forces who has disobeyed an order or taken an unconventional or unpopular position as a matter of principle. That possibility, however, does not serve to make his claim a free-standing one, separate and

independent from the matters at issue in the military prosecution. The Court therefore concludes that to consider the merits of the habeas petition at this time would be to directly intervene in the military case, a path not countenanced by the Supreme Court in *Parisi.*

In sum, this case exemplifies the type of situation that demands observance of the principle of comity. After all, comity incorporates more than the practical considerations behind an exhaustion requirement. Comity dictates that "one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950). Specialist New's claim that the military tribunal lacks jurisdiction over him and that his orders are unlawful can be and has been made to the military tribunal, *see Apple v. Greer*, 554 F.2d 105, 109 (3d Cir.1977), and military tribunals are competent to consider these sorts of constitutional and statutory questions. *Schlesinger v. Councilman*, 420 U.S. at 758, 95 S.Ct. at 1313; *Levy v. Corcoran*, 389 F.2d 929, 930–31 (D.C.Cir.1967) (Leventhal, J. concurring). "Congress having provided the extensive and elaborate system designed to achieve justice within the military, no warrant appears for judicial end-running of that system." *Williams v. Secretary of the Navy*, 787 F.2d 552, 559–61 (Fed.Cir.1986). The issues raised in this case are within the province of the military tribunals, and there is no need for this Court to "blaze a trail on unfamiliar ground" when the military court stands ready to consider Specialist New's claims. *Noyd v. Bond*, 395 U.S. 683, 696, 89 S.Ct. 1876, 1884, 23 L.Ed.2d 631 (1969); *see Gusik v. Schilder*, 340 U.S. 128, 131–32, 71 S.Ct. 149, 151–52, 95 L.Ed. 146 (1950).

## III. CONCLUSION

As the Court noted at the time of its decision denying Specialist New's request to stay the court martial proceedings, the issues he raises under the United Nations Participation Act are important issues, implicating the balance of power between the President

as Commander-in-Chief and the Congress and the relationship between the United States and the United Nations. This Court has taken them seriously, and it is confident that the military tribunals and the Court of Appeals for the Armed Forces will do so as well. The Court rejects the notion that the quality of justice in the military tribunals is inferior to that which is provided by Article III courts. For the reasons stated, comity requires this Court to stay its hand until the court martial proceedings and all appeals have run their course. Accordingly, it is hereby

ORDERED that Michael G. New's petition for a writ of habeas corpus is DENIED. Once the military proceedings are completed, Specialist New may either move to reopen this proceeding or file a new petition for a writ of habeas corpus.

SO ORDERED.