**Michael G. NEW, Appellant,**

v.

**William S. COHEN, Secretary of Defense and Togo D. West, Jr., Secretary of the Army, Appellees.**

No. 96–5158.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 26, 1997.

Decided Nov. 25, 1997.

Michael P. Farris, Washington, DC, argued the cause for appellant, with whom Herbert W. Titus, Virginia Beach, VA, was on the briefs. Ronald D. Ray, Alexandria, VA, entered an appearance.

Michael J. Ryan, Assistant U.S. Attorney, Washington, DC, argued the cause for appellees, with whom Mary Lou Leary, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney, were on the brief.

Before: EDWARDS, Chief Judge, GINSBURG and TATEL, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge.

Michael G. New was serving in the United States Armed Forces as a Medical Specialist in August 1995 when he received notice that his unit was to be deployed to the Republic of Macedonia as part of the United Nations Peacekeeping Force ("U.N. Force"). Subsequently, Specialist New refused to follow orders to appear in formation wearing U.N. insignia and headgear. His brigade commander charged him with failure to obey a direct, lawful order, a violation of Article 92 of the Uniform Code of Military Justice. Shortly before his court-martial, New petitioned for a writ of habeas corpus in the United States District Court, contending that the orders in question (1) violated the Constitution, federal law, and his enlistment contract and oath, (2) impermissibly contemplat-

ed his transformation into a U.N. soldier, and, therefore, (3) converted his status from soldier to civilian. New claimed that he was entitled to an immediate honorable discharge. *See* Petition for a Writ of Habeas Corpus ("Habeas Petition"), Joint Appendix ("J.A.") 2. The District Court, in a decision issued after the court-martial trial but before military appeals were completed, refused to reach the merits of New's petition for habeas corpus, holding that the equitable principle of comity required the court to stay its hand pending the military proceedings. *See United States ex rel. New v. Perry*, 919 F.Supp. 491, 500 (D.D.C.1996).

We affirm the District Court's dismissal of New's habeas petition on the ground that he has failed to exhaust his remedies in the pending court-martial action. In so holding, we follow the basic principle of comity set forth in *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), that service members subject to military discipline must exhaust their military remedies before seeking collateral review in federal court. Because New has not completed the appeals of his courtmartial conviction within the military justice system, he currently is barred from pursuing an action on a habeas corpus petition in District Court.

## I. BACKGROUND

Specialist New enlisted in the United States Army for an eight-year term, four years of which were to be served in the "Regular component of those forces," beginning on February 18, 1993. *New*, 919 F.Supp. at 492. After receiving basic training and Medical Specialist training, he was deployed for two months to Kuwait and then, in July 1995, to Germany. *Id.* at 493. On August 21, 1995, New was informed that his unit would be deployed in October of that year as part of the U.N. Force. *Id.* New learned that, as a member of that force, he would be required to wear a U.N. shoulder patch on his uniform and distinctive, blue U.N. headgear.

New objected to the particular uniform requirements as unlawful. He informed his squad leader and platoon leader that he would not comply with those requirements unless they were shown to be justified by constitutional authority. New's superiors responded by ordering him to rethink his position in light of the history and objectives of the U.N. Charter. New also received counseling by three noncommissioned officers in the chain of command and a warning that he would be subject to discipline if he disobeyed the order to wear the U.N. insignia. On September 19, 1995, New submitted a written statement of protest ("Statement") to his superior officers, in which he indicated a belief that the U.N. Charter was inconsistent with the United States Constitution. In addition, he repeated his objection to the wearing of U.N. accoutrements, stating that he interpreted the wearing of a uniform as a sign of allegiance to the authority "so signified or which issues that uniform," and that, therefore, he could not wear the accoutrements because he was "not a citizen of the United Nations ... not a United Nations Fighting Person [and has] never taken an oath to the United Nations." Statement, J.A. 147. In the Statement, he also wrote that, "[i]n order to avoid controversy or to avoid placing the Army in a bad light," he had requested a transfer to another unit or, reluctantly as an alternative, an honorable discharge. *Id.* According to New, the Army had denied both of these requests. *Id.*

On October 2, 1995, New, along with the rest of his battalion, attended an information briefing on the legal bases for the deployment of American troops as part of the U.N. Force in Macedonia. At the briefing, and again at a company formation two days later, the soldiers who were to be deployed to Macedonia were ordered to appear on October 10, 1995, wearing the U.N. arm patches and headgear. 919 F.Supp. at 493.

New appeared in formation on October 10, 1995 wearing a uniform that did not display the ordered accoutrements. He was subsequently charged with an Article 92 violation, and a trial by court-martial was set to follow. On January 16, 1996, he moved in the District Court for an emergency stay of the court-martial and petitioned for a writ of habeas corpus. The Court heard oral argument and denied the stay. Memorandum Opinion and Order of January 16, 1996, J.A.

123–24. Afterwards, New was convicted by a court-martial jury and sentenced to a bad conduct discharge. J.A. 84–85.

In his petition for habeas corpus, New contended that he was "entitled to an immediate honorable discharge" on the theory that the United States illegally had attempted to transform him into a U.N. soldier. Habeas Petition, J.A. 2. This attempted transformation was prohibited, according to New, for three reasons. First, he claimed that the United States Constitution, federal statutes, and applicable regulations prohibited the acceptance by federal employees, including uniformed members of the Army, of "any present or emolument ... from a foreign government without the consent of Congress." Id. at 6. Second, New argued that the President of the United States was prohibited by the United States Constitution and sections 6 and 7 of the United Nations Participation Act of 1945 ("Participation Act"), as amended, 22 U.S.C. §§ 287d to d–1 (1994), from deploying United States troops as part of the U.N. Force in Macedonia unless he first obtained the consent of Congress, which he allegedly had not done. Habeas Petition, J.A. 7. Finally, New contended that the orders relating to his deployment and wearing of U.N. accoutrements conflicted with and breached his enlistment contract. Id. at 8–9. New asserted that the unlawful orders absolved him of his remaining obligation to serve in the Army; changed his status such that he was a civilian, not subject to a court-martial; and entitled him to an honorable discharge. Id. at 2.

On March 28, 1996, in a published opinion, the District Court denied New's petition for habeas corpus. See New, 919 F.Supp. at 500. The trial court held that the equitable principle of comity prevented it from considering New's claims until all military appeals had run their course. Id. Subsequently, on June 12, 1996, the court-martial convening authority approved New's bad conduct discharge. J.A. 149; Appellant's Br. at 6; Appellee's Br. at 4. New's conviction by court-martial and the resulting sentence are subject to review by the Army Court of Criminal Appeals. See 919 F.Supp. at 494 (describing pending military proceedings). If that appeal is unsuccessful, New may seek discretionary review in the Court of Appeals for the Armed Forces, which is composed of civilian judges. Id. New now appeals the District Court's denial of his petition for a writ of habeas corpus.

## II. ANALYSIS

### A. The Applicable Case Law

#### 1. The Basic Principles of Comity

In *Parisi v. Davidson*, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972), the Supreme Court outlined the "basic principles of comity that must prevail between civilian courts and the military judicial system." Id. at 46, 92 S.Ct. at 822. At the heart of these principles is the general rule that a federal court must await the final outcome of court-martial proceedings in the military justice system before entertaining an action by a service member who is the subject of the court-martial. Although this rule often "is framed in terms of 'exhaustion,' it may more accurately be understood as based upon the appropriate demands of comity between two separate judicial systems." Id. at 40, 92 S.Ct. at 819.

The Court in *Parisi* allowed the petitioner in that case—a service member seeking discharge as a conscientious objector—to pursue a habeas corpus petition in federal court even though court-martial charges were still pending against him. The Court concluded that the demands of comity did not require dismissal of Parisi's habeas petition, because he had fully exhausted the administrative procedures that were in place for review of claims by persons seeking discharge as conscientious objectors. Since the Court found that "[c]ourts martial are not convened to review and rectify administrative denials of conscientious objector claims or to release conscientious objectors from military service," id. at 42, 92 S.Ct. at 820, it followed that the petitioner was not required to await the disposition of a court-martial charge before seeking habeas relief in federal court. However, the Court in *Parisi* made it clear that the decision, which merely "recognize[d] the historic respect in this Nation for valid conscientious objection to military service," id at 45, 92 S.Ct. at 822, was narrow and

"should not be understood as impinging upon the basic principles of comity," *id.* at 46, 92 S.Ct. at 822.

Any doubt about the narrow reach of the judgment in *Parisi* was put to rest in *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). In *Councilman,* the Court reaffirmed the general rule that "federal courts normally will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted." *Id.* at 758, 95 S.Ct. at 1313; *see also Noyd v. Bond,* 395 U.S. 683, 693–98, 89 S.Ct. 1876, 1882–85, 23 L.Ed.2d 631 (1969); *Gusik v. Schilder,* 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950). This rule was seen to be grounded in the same "considerations of comity," *Councilman,* 420 U.S. at 756, 95 S.Ct. at 1312–13, alluded to in *Parisi.*

*Councilman* indicates that there are two principal reasons why considerations of comity normally preclude a federal court from intervening in a pending court-martial proceeding. First, the military justice system must remain free from undue interference, because "[t]he military is a 'specialized society separate from civilian society' with 'laws and traditions of its own developed during its long history.'" *Id.* at 757, 95 S.Ct. at 1313 (quoting *Parker v. Levy,* 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439 (1974)). Second, Congress sought to balance the competing interests in military preparedness and fairness to service members charged with military offenses, by "creat[ing] an integrated system of military courts and review procedures." 420 U.S. at 758, 95 S.Ct. at 1313. "[I]t must be assumed that the military court system will vindicate servicemen's constitutional rights." *Id.* Thus, as suggested in *Parisi,* the doctrine of comity aids the military judiciary in its task of maintaining order and discipline in the armed services, eliminates needless friction between the federal civilian and military judicial systems, and gives due respect to the autonomous military judicial system created by Congress. *Parisi,* 405 U.S. at 40, 92 S.Ct. at 819.

### 2. *The Concept of Exhaustion*

█ "The concept of 'exhaustion' in the context of the demands of comity," *Parisi,* 405 at 40 n. 6, 92 S.Ct. at 819 n. 6, is in part justified by the same "practical considerations" that justify exhaustion of administrative remedies generally, namely the "need to allow agencies to develop the facts, to apply the law in which they are peculiarly expert, and to correct their own errors." *Councilman,* 420 U.S. at 756, 95 S.Ct. at 1312; *see also id.* at 758, 95 S.Ct. at 1313. In connection with court-martial proceedings, the exhaustion requirement is particularly important, because, given the reality that the military must "prepare for and perform its vital role" of fighting wars, it "must insist upon a respect for duty and a discipline without counterpart in civilian life." *Id.* at 757, 95 S.Ct. at 1313. Congress recognized these pressing needs when it created an integrated system of military courts and review procedures. *Id.* at 758, 95 S.Ct. at 1313.

█ The Court in *Councilman* concluded that the same principles supporting the exhaustion requirement for habeas petitions by service members also governed the proper exercise of the federal courts' equitable jurisdiction over pending court-martial proceedings. Absent truly compelling circumstances, service members are precluded from bringing suit in federal court seeking to enjoin court-martial proceedings on jurisdictional or other grounds, just as they are barred from seeking collateral review of their court-martials before they have exhausted their appeals within the military system. Accordingly, the Court set forth the rule that "when a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system, the federal district courts must refrain from intervention, by way of injunction or otherwise." *Id.*

The exhaustion requirement prevented the District Court in *Councilman* from hearing a suit for injunctive relief brought by an Army captain against whom court-martial charges had been preferred for drug-related activities. The Army captain had claimed in his petition that the offenses charged were not "service connected" and hence were not within court-martial jurisdiction. *Id.* at 741–42, 95 S.Ct. at 1304–05. The Court held that

this jurisdictional challenge, although not without support, first had to be fully considered by military authorities, and that the service member had to exhaust any other military remedies that were available to him before a federal court could exercise collateral review over the proceedings. *Id.* at 759–61, 95 S.Ct. at 1313–15.

### 3. *Exceptions to the Rule of Comity*

■ As noted above, at the heart of the comity doctrine is the general rule that a federal court must await the final outcome of court-martial proceedings in the military justice system before entertaining an action by a service member who is the subject of the court-martial. There are two principal exceptions to this rule. One is noted in *Parisi*, where the Court held that, "[u]nder accepted principles of comity, the court should stay its hand only if the relief the petitioner seeks—discharge as a conscientious objector—would also be available to him with reasonable promptness and certainty through the machinery of the military judicial system in its processing of the court-martial charge." 405 U.S. at 41–42, 92 S.Ct. at 820. It is clear from the Court's decision, however, that the *Parisi* exception—allowing a service member to pursue a collateral attack challenging a military action before the completion of court-martial proceedings—is limited to situations in which: (1) a service member subject to military authority asserts a legal right against the military that has been clearly established by statute, regulation, or other applicable law; (2) administrative procedures are in place to enforce that right; and (3) the service member has fully exhausted these procedures and has been denied the relief attendant to the right asserted.

In claiming that he wrongly was denied conscientious objector status, the service member in *Parisi* asserted a right clearly recognized by military regulations. *See* 405 U.S. at 38 n. 2, 92 S.Ct. at 818 n. 2 (citing Department of Defense Directive No. 1300.6 (May 10, 1968)). Moreover, because the service member in *Parisi* had exhausted his administrative remedies for release from the military based on this asserted right, the district court had no good reason to stay its

hand pending the court-martial proceedings. The Supreme Court considered and rejected comity as a reason for denying the habeas petition, given that the relief sought by the service member—discharge as a conscientious objector—could not be obtained through the military judicial system. *Id.* at 41–42, 92 S.Ct. at 819–20. It is true, as the Court recognized in *Parisi*, that "the writ of habeas corpus has long been recognized as the appropriate remedy for servicemen who claim to be unlawfully retained in the armed forces." *Id.* at 39, 92 S.Ct. at 818 (citations omitted). But the Court in *Parisi* also made it clear that the decision in the case "should not be understood as impinging upon the basic principles of comity that must prevail between civilian courts and the military judicial system." *Id.* at 46, 92 S.Ct. at 822. Indeed, it is implicit in the Court's decision in *Councilman* that any attempt to extend the *Parisi* exception beyond the circumstances of that case would wreak havoc on military discipline.

■ The second exception to the exhaustion rule is quite simple: a person need not exhaust remedies in a military tribunal if the military court has no jurisdiction over him. In other words, the military has no authority to subject *civilians* to court-martial proceedings. *See, e.g., McElroy v. U.S. ex rel. Guagliardo*, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960); *Reid v. Covert*, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); *U.S. ex rel. Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955). In the cases embracing this exception, it has been undisputed that the persons subject to the court-martials either never had been, or no longer were, in the military. The Court in *Councilman* held that those cases, in which " 'the complainants raised *substantial* arguments denying the right of the military to try them at all,' " 420 U.S. at 759, 95 S.Ct. at 1314 (quoting *Noyd*, 395 U.S. at 696 n. 8, 89 S.Ct. at 1884 n. 8) (emphasis added), were plainly distinguishable from the situation presented by a service member challenging the military's jurisdiction. The service member in *Councilman*, the Court noted, "was on active duty when the charges against him were brought" and hence there was "no question that he [was] subject to military authority and in proper

cases to disciplinary sanctions levied through the military justice system." 420 U.S. at 759, 95 S.Ct. at 1314.

### B. Application of the Relevant Law to Specialist New's Case

With the foregoing legal principles in mind, we now turn to consideration of New's claims before this court.

#### 1. Comity and the Rule of Exhaustion

■ Given the record in this case, we hold that the District Court was fully justified in dismissing New's habeas petition on grounds of comity for lack of exhaustion. In other words, as the District Court correctly found, *Councilman* is dispositive of this case. When New first petitioned for habeas corpus, claiming that the military did not have jurisdiction over him and that he was entitled to an honorable discharge, he already had been charged with failing to obey orders and his court-martial was imminent. The appeal of his court-martial and the decision of the military tribunal are still pending. Moreover, New cannot demonstrate "harm other than that attendant to the resolution of his case" within the military system. 420 U.S. at 758, 95 S.Ct. at 1313. Accordingly, under well established law, the District Court properly found that it lacked authority to intervene in the pending military proceedings.

#### 2. New's Jurisdictional Challenge

■ New claims that the Army no longer has jurisdiction over him because of the military's allegedly unlawful attempt to require him to serve as a part of a U.N. mission. There appear to be two parts to New's claim on this point: first, the alleged unlawful action by the military relieved him from having to exhaust court-martial proceedings before filing a habeas petition in federal court; and, second, the Army's actions relieved him from all further commitments to the military and, thus, as a "civilian," he is no longer subject to court-martial. New's positions are without merit.

In *Councilman*, the Supreme Court made clear that military courts are capable of, and indeed may have superior expertise in, considering challenges to their jurisdiction over

disciplinary proceedings. *Id.* at 760, 95 S.Ct. at 1314 (question of whether service member's alleged offense is "service related" and therefore within jurisdiction of military courts raises issues "as to which the expertise of military courts is singularly relevant"); *see also Apple v. Greer*, 554 F.2d 105, 109 (3d Cir.1977) ("[T]he claim that there is a lack of jurisdiction can be made to a military tribunal."). Thus, New must argue to the military authorities reviewing his case that the orders in question were unlawful and absolved him of any remaining military service obligations. For this court to hold otherwise would produce a rule allowing service members to circumvent the exhaustion requirement merely by contending, without reference to an applicable statute or regulation, that an action by the military "released" them from further service. This result would encourage premature federal judicial intervention in the affairs of the military, a scenario that was expressly rejected by the Court in *Councilman*.

■ The exhaustion requirement aims to give a military tribunal a full opportunity to consider the multitudinous claims that might be brought by service members regarding the terms and conditions of their service. Comity demands that we give due respect to the military tribunal to carry out its congressionally prescribed responsibilities. If the orders resulting in New's court-martial were "unlawful," as he claims, that is a matter that can be addressed by the military tribunal in their consideration of the charges against him.

■ Furthermore, notwithstanding his claims to the contrary, New is still a member of the military and subject to military discipline. His contention that the disputed orders effectively discharged him from the military and rendered him a civilian before the occurrence of *any* administrative or judicial proceeding, and, therefore, that his case is controlled by *McElroy v. U.S. ex rel. Guagliardo, et al.*, is meritless. In his Statement submitted on September 19, 1995, New indicated that he had requested an honorable discharge as a secondary alternative to *transfer to another unit;* by requesting the

transfer, he acknowledged that he still was a member of the military. In any event, as New's counsel conceded at oral argument, there is no authority to support the suggestion that New became a civilian immediately upon issuance of the allegedly unlawful orders. On the record at hand, it is clear that when New disobeyed his orders, he was still in the service, and he cannot now present a "substantial argument[ ]," *Councilman*, 420 U.S. at 759, 95 S.Ct. at 1313–14, that he is not subject to military discipline and court-martial.

### 3. *New's Claim that he is Covered by the* Parisi *Exception*

■ New advances the further argument that his situation resembles that of the service member in *Parisi*, and, therefore, he should be allowed to bring a habeas petition in federal district court notwithstanding the pending court-martial proceeding. We reject this contention, for it is clear that New can find no solace in *Parisi*.

The service member in *Parisi* had initiated an application for discharge as a conscientious objector nine months after his induction into the Army as a draftee, but before he committed the allegedly wrongful act (refusing to board an airplane for Vietnam) that led to his court-martial. 405 U.S. at 35–36, 92 S.Ct. at 816–17. While the appeal of his court-martial conviction was still pending, the Army made a final decision denying him conscientious objector status. In concluding that the district court should hear the service member's petition even though the Army had not yet issued a final determination on his court-martial charges, the Supreme Court reasoned that the service member's petition for habeas corpus was based on the Army's refusal of his application for discharge as a conscientious objector—an application which "antedated and was independent of the military proceedings" related to his courtmartial. *Id.* at 41, 92 S.Ct. at 820. Hence, the "case [did] not concern a federal district court's direct intervention in a case arising in the military court system." *Id.* (citations omitted). The doctrine of comity was seen to have no application in *Parisi* because the military tribunal could not award the service

member the desired relief—conscientious objector discharge—in conjunction with the court-martial proceedings. *Id.* at 41–44, 92 S.Ct. at 819–21.

New argues that *Parisi* controls his case because his petition for habeas corpus constitutes a collateral attack on the Army's allegedly wrongful denial of his claim for discharge. New says his claim was presented prior to his disobeying the orders to appear in formation wearing U.N. accoutrements. According to New, he "initiated his request for reassignment or for an honorable discharge" six weeks before his court-martial, when he first objected to the deployment to Macedonia and wearing of U.N. accoutrements as unlawful. Appellant's Br. at 13. Moreover, he "sought further review from his superior officers up the chain of command" on September 19, 1995 by submitting the Statement. *Id.* at 14. The fact that he took no further action on his request for discharge was excusable, he contends, for the simple reason that, as noted by the District Court, there were no formal procedures for him to pursue. 919 F.Supp. at 497; Appellant's Br. at 11–12.

New's reliance on *Parisi* is misplaced. Assuming, *arguendo*, that the military tried to transform him into a U.N. soldier, or that it otherwise issued him illegal orders, New cannot show that he has a clearly established right to discharge from the military as a result of such actions. In other words, there is no authority for the proposition that a service member who receives an illegal order is entitled to immediate discharge from the military. So even if New's substantive claims had merit, this would not provide a basis for his honorable discharge from the military.

It is also noteworthy that New concedes that there are no administrative procedures within the military to enforce the rights that he asserts. Appellant's Br. at 12. Thus, this case is controlled by *Councilman*, which requires New first to present his arguments about the legality of his orders as a defense to the court-martial action. Under *Councilman*, New's personal beliefs about his orders afford him no immediate recourse to relief in federal court. When he disobeyed the or-

ders of his superiors, he faced discipline and court-martial, and he cannot now seek judicial intervention before seeking relief in the system of military justice.

In addition, New's contention, tied vaguely to the judgment in *Parisi*, that the *lack* of administrative procedures for his claim for honorable discharge *entitles* him to an immediate habeas hearing, is unavailing. Upon receiving the orders which he thought to be illegal, New had two options. He could have chosen to obey the orders and then sought judicial review of the military's policies. *Cf. Goldman v. Weinberger*, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) (suit to enjoin application of Air Force regulation that forbade officer from wearing yarmulke while on duty and in uniform). Or he could follow the path that he took: disobey the orders and challenge their validity in the subsequent disciplinary proceedings. Having chosen the latter course of action, New might yet obtain vindication through court-martial proceedings, or he may seek collateral review in federal court following an adverse judgment by the highest military tribunal. However, any option contemplating an exception to the exhaustion requirement is foreclosed by the doctrine of comity imposed by *Parisi* and *Councilman*. The Court's emphasis on the need for duty and discipline in the armed forces makes clear that, absent a clearly defined right enforceable in a proceeding other than a court-martial—for example, an administrative proceeding to address a service member's conscientious objector status—the federal courts normally should not interfere with the day-to-day operations of the military services.

This rule makes sense for obvious reasons. Any other standard would invite military personnel to challenge disfavored orders of superiors touching upon uniforms, working hours, training procedures, assignments, and a host of other matters. Such an absurd result surely was not contemplated by *Parisi*. That case was decided prior to *Councilman* and has been extremely limited in application. *See, e.g., Cole v. Spear*, 747 F.2d 217, 220 (4th Cir.1984) (en banc) (applying *Parisi* and reversing district court's grant of discharge to conscientious objector; fact that

pending disciplinary action against objector currently prevented final administrative action on her application for discharge did not constitute "valid reason to excuse her from the necessity of exhaustion"). Indeed, New's counsel could cite to no case, other than *Parisi*, justifying the claim that New should be free to challenge disfavored orders by civil action instead of court-martial.

C. *Other Remedial Options Available to Specialist New*

During the course of argument, New's counsel suggested that, absent consideration of his habeas petition, New would have no reasonable avenues of relief. We disagree.

After New disobeyed the disputed orders and was charged with violating Article 92 of the Uniform Code of Military Justice, he faced three potential outcomes within the military system, two of which are still possible. First, the court-martial jury could have convicted him of failing to obey a direct, lawful order and incarcerated him in military prison, and the military authorities reviewing his case could have sustained this sentence. Obviously, in this scenario—which is now foreclosed by the fact that New was convicted and sentenced only to a bad conduct discharge as opposed to confinement—New could bring a habeas petition in federal district court challenging his conviction. *See Burns v. Wilson*, 346 U.S. 137, 139–42, 73 S.Ct. 1045, 1047–49, 97 L.Ed. 1508 (1953); *Curry v. Secretary of the Army*, 595 F.2d 873, 875 & n. 8 (D.C.Cir.1979); *cf. Councilman*, 420 U.S. at 747–48, 95 S.Ct. at 1307–08.

Second, New could have, and still might, prevail in his defense against the Article 92 charge. This outcome likely would render any claims in a habeas petition moot.

Finally, New still faces the possibility that the court-martial conviction and subsequent review by military tribunals and officials will result in an other than honorable discharge; this outcome, no doubt, would not vindicate all of the interests currently asserted by New. In these circumstances, New again has some options. If he suffers monetary losses as a result of his discharge, he may be able to collaterally attack the underlying conviction in the United States Court of Federal

Claims. *See Councilman,* 420 U.S. at 748, 95 S.Ct. at 1308 (citing *Runkle v. United States,* 122 U.S. 543, 22 Ct.Cl. 487, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887)); *id.* at 751, 95 S.Ct. at 1309–10; *Matias v. United States,* 923 F.2d 821, 822–25 (Fed.Cir.1990) (exercising jurisdiction over former service member's back pay claim challenging court-martial conviction); *Bowling v. United States,* 713 F.2d 1558, 1561 (Fed.Cir.1983).

New also might be able to bring an action in district court seeking nullification of the conviction underlying his bad conduct discharge. *See Hatheway v. Secretary of the Army,* 641 F.2d 1376, 1379 (9th Cir.1981) ("The district court had equitable jurisdiction under 28 U.S.C. § 1331 and mandamus jurisdiction under § 1361."); *Kauffman v. Secretary of the Air Force,* 415 F.2d 991, 994 (D.C.Cir.1969) (action to have court-martial conviction and sentence declared void); *Williamson v. Secretary of the Navy,* 395 F.Supp. 146, 147 (D.D.C.1975) (exercising jurisdiction to review court-martial under 28 U.S.C. § 1331, citing *Kauffman* ); 2 FRANCIS A. GILLIGAN & FREDRIC I. LEDERER, COURT-MARTIAL PROCEDURE § 26–11.00, at 181 (1991).

In delineating these scenarios, however, we do not mean to suggest that New's claims have merit or that a federal court would even reach the merits of his arguments. New argues on appeal, as he did in substantial part before the District Court, that the orders relating to his deployment and wearing of U.N. insignia were illegal on the grounds that: (1) the wearing of the insignia violates the United States Constitution's prohibition on office holders from accepting titles or offices from foreign states without Congressional consent, *see* U.S. CONST., art. I, § 9, cl. 8, and also violates federal law and military dress regulations; (2) the President did not have power under sections 6 and 7 of the Participation Act, 22 U.S.C. §§ 287d to d–1,

to deploy U.S. soldiers as part of the U.N. Force without Congressional consent; and (3) the contested orders breached New's enlistment contract and deprived him of basic rights as a soldier and a citizen.

It is difficult to see how any of these allegations, even if shown to be true, would support New's contention that he is entitled to an honorable discharge from the military. New points to no legal authority supporting the proposition that unlawful orders potentially can transform a service member's "status" to that of a civilian. Indeed, as the District Court pointed out, case law suggests that military enlistment is a special sort of contract "which changes the status, and where that is changed, no breach of the contract destroys the new status or relieves from the obligations which its existence imposes." *United States v. Grimley,* 137 U.S. 147, 151, 11 S.Ct. 54, 55, 34 L.Ed. 636 (1890); *see Bell v. United States,* 366 U.S. 393, 402, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961); *New,* 919 F.Supp. at 498.

In any event, questions related to the legality of the deployment of troops to Macedonia and the orders to wear U.N. accoutrements need not be reached in this appeal, because New has failed to exhaust his remedies for relief in the pending court-martial action.

### III. CONCLUSION

For the reasons given above, we affirm the judgment of the District Court dismissing New's petition for habeas corpus on grounds of comity.