United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 29, 2003**

Charles R. Fulbruge III
Clerk

REVISED SEPTEMBER 4, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-30966

_____


PHILLIP LAWRENCE,

                              Plaintiff-Appellant,

            v.

D.M. MCCARTHY, Lieutenant General,
United States Marine Corps, Commander,
Marine Forces Reserve; J.M. CODEGA,
Lieutenant Colonel, United States
Marine Corps Reserve, Investigating
Officer; C.C. MILLER, Major, United
States Marine Corps, Trial Counsel;
M.E. SAYEGH, Major, Trial Counsel,

                              Defendants-Appellees.

_____

    Appeal from the United States District Court
   for the Eastern District of Louisiana, New Orleans
_____

Before DAVIS, JONES, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

    This appeal arises from the United States Marine Corps's
attempts to recall the appellant, Major Phillip Lawrence, to
active duty in order to answer allegations of improper behavior.

-1-

Lawrence is seeking injunctive relief from the military's attempts to activate him in federal court. The district court, finding Lawrence's suit meritless, denied relief and dismissed the complaint. Because we determine that the district court should have abstained from considering the case, given the presence of parallel proceedings in the military courts, we vacate the judgment of the district court.

I.

Major Philip Lawrence is an officer in the United States Marine Corps ("Marine Corps"). He served eleven years in the Regular Marine Corps ("USMC"), and has spent the past ten years in the Reserve Marine Corps ("Reserves"). On October 16, 2001, Lawrence was ordered to active duty for the period of October 17-21, 2001 pursuant to Active Duty for Special Work ("ADSW")[1] orders. During this period of active duty, Lawrence allegedly committed several violations of the military's criminal code, the Uniform Code of Military Justice, 10 U.S.C. § 801 et seq. (1998 & Supp. 2003) ("UCMJ").[2] At the end of the period, Lawrence was returned to inactive status without any disciplinary action

---

[1]According to Marine Corps Order 1001.59, Section 1.a, the ADSW program provides the Reserves or the USMC with reserve personnel with particular training or qualifications to assist with special projects or to meet operational, administrative, and support requirements of short-term duration.

[2]Specifically, Lawrence was charged with violating Articles 86 (unauthorized absence), 92 (failure to obey a lawful order and dereliction in duties), and 133 (conduct unbecoming an officer). 10 U.S.C. §§ 886, 892, 933.

having been taken. Lawrence was again called to active duty on January 14, 2002, in support of Operation Noble Eagle Enduring Freedom. He was released from this tour of duty on June 2, 2002, again without any disciplinary action being taken regarding the alleged violations of the UCMJ. The parties dispute his military status following this release. The Reserves claim that he was returned to inactive status as a member of the Selective Reserves, his status prior to activation. Lawrence claims that he was discharged.[3]

On July 2, 2002, Lieutenant General D. M. McCarthy, Commander of the Reserves, appointed Lieutenant Colonel J. M. Codega to investigate Lawrence's alleged infractions pursuant to Article 32 of the UCMJ.[4] 10 U.S.C. § 832. On July 23, 2002, charges were formally preferred[5] against Lawrence. On July 26, 2002,[6] Lawrence was issued orders, pursuant to Articles 2 and 3

---

[3]A "discharge" severs all military status. "Separation" is a more general term which is used to refer to either a discharge or release from active duty. "Release from active duty" means termination of active-duty status and transfer or reversion to a Reserve component not on active duty. 53A Am. Jur. 2d § 183 (1996 & Supp. 2002).

[4]An Article 32 investigation is an impartial inquiry into the truth of the charges alleged that culminates in a recommendation as to how the military should proceed. 10 U.S.C. § 832.

[5]A preferral of charges is the closest military analogue to a formal indictment. *United States v. Vogan,* 35 M.J. 32, 33 (C.M.A. 1992).

[6]The orders were reissued on August 7, 2002, to correct a defect in the original orders.

of the UCMJ, directing him to return to active duty in order to participate in the Article 32 investigation.

Lawrence immediately sought a temporary restraining order ("TRO") and preliminary injunction from the U.S. District Court for the Eastern District of Louisiana, claiming that the Marine Corps lacked the authority to call him to active duty under Articles 2 and 3 of the UCMJ. Senior District Judge Marcel Livaudais, Jr., granted the TRO the same day, restraining the appellees from recalling Lawrence to active duty "until there can be a full contested hearing on the merits." The hearing was held as scheduled, and on August 21, Judge Livaudais entered an Order and Judgment dissolving the TRO, denying Lawrence's requests for preliminary and permanent injunctions, and *sua sponte* dismissng the complaint with prejudice. Lawrence was subsequently called to active duty for purposes of the Article 32 investigation. The Navy-Marine Corps Court of Criminal Appeals ("NMCM") is currently considering Lawrence's request for an extraordinary writ that would dismiss all of the charges referred[7] for lack of jurisdiction.

Lawrence asks us to resolve the following issues on appeal: (1) whether the district court erred in denying his request for injunctive relief; (2) whether the Marine Corps violated his Fifth Amendment due process rights by failing to follow its own

---

[7]A referral orders specific charges to be tried by court-martial. Rule for Court Martial 601.

regulations and the Administrative Procedure Act; and (3) whether the district court erred in *sua sponte* dismissing his complaint following the preliminary injunction hearing. Because we believe that federal courts should abstain from determining whether someone in Lawrence's position may be called to active duty when administrative remedies remain available and parallel proceedings are pending in the military courts, we decline to address the dubious merits of the appeal and vacate the judgment of the district court.

## II.

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. §§ 1331 and 1292(a), which permit federal courts to entertain suits involving a question of federal law seeking injunctive relief. *See also Chappell v. Wallace,* 462 U.S. 296, 304-05 (citing injunctive actions as indicative of the type of relief service members may seek in the civilian courts).

### *A.*

The Marine Corps urges us to dismiss this case on the additional grounds that Lawrence has failed to exhaust his military remedies before seeking relief from this court. "It is basic to military claims that the petitioner must exhaust her military remedies before seeking federal court intervention." *Wickham v. Hall,* 706 F.2d 713, 715 (5th Cir. 1983)(citing *Schlesinger v. Councilman,* 420 U.S. 738, 758 (1975). *Accord Falbo v. United States,* 320 U.S. 549, 553 (1944); *Mindes v.*

*Seaman,* 453 F.2d 197, 201 (5th Cir. 1971). This requirement is premised upon principles of comity, the need to raise an army speedily and efficiently, and the specialized expertise of military institutions with respect to its internal affairs. *In re Kelly,* 401 F.2d 211, 213 (5th Cir. 1968); *Falbo,* 320 U.S. at 553; *Von Hoffburg v. Alexander,* 615 F.2d 633, 637-38 (5th Cir. 1980). *Accord Sedivy v. Richardson,* 485 F.2d 1115, 1119 (3d Cir. 1973). Lawrence argues that resorting to an administrative remedy would be futile and therefore exhaustion is not required, citing *Von Hoffburg v. Alexander, supra* at 638. Because we find abstention appropriate, we need not consider the arguments with respect to exhaustion.

*B.*

Although the Marine Corps never requested (until we raised the possibility) that either the district court or this court stay its hand pending the outcome of ongoing military proceedings, we believe it is necessary to raise the issue whether the federal courts have equitable jurisdiction to hear this case under the abstention doctrine promulgated by *Younger v. Harris,* 401 U.S. 37 (1971).[8]

---

[8]*See Waldron v. McAtee,* 723 F.2d 1348, 1351 (7th Cir. 1983)(explaining that appellate courts have the power and occasionally the duty to *sua sponte* order abstention); *Accord Cruz v. Melecio,* 204 F.3d 14, 22 & n.7 (1st Cir. 2000); *H.C. v. Koppel,* 203 F.3d 610, 613 (9th Cir. 2000). *See also Murphy v. Uncle Ben's, Inc.,* 168 F.3d 734, 737 (5th Cir. 1999)(noting that district court may raise abstention *sua sponte*). *But see Swisher*

In *Younger,* the Supreme Court held that a federal court, with valid subject-matter jurisdiction, was nonetheless prohibited from enjoining a state criminal proceeding without a valid showing of "extraordinary circumstances" that would warrant federal intervention.  401 U.S. 37, 45, 53-54.  The Court based its ruling upon considerations of equity and comity.  *Id.* at 43-44.  The Court explained,

> [C]ourts of equity should not act...when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief....This underlying reason...is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id.* at 43-44.

The Supreme Court has since applied *Younger*-abstention in various other contexts, including that of *Schlesinger v. Councilman,* where a serviceman sought an injunction in federal court against a pending court martial proceeding.  420 U.S. 738, 754 (1975).  The Court held there that the federal district courts must decline from intervening in the military court system when a serviceman seeking an injunction can show no harm "other

---

*v. Brady,* 438 U.S. 204, 213 n.11 (1978)(noting that when state voluntarily submits to a federal forum, and does not seek dismissal pursuant to the *Younger* doctrine, it is not inclined to examine the issue *sua sponte*).

than that attendant to the resolution of his case in the military court system." *Id.* at 758.

Although federalism concerns are not implicated when federal intervention is sought in military matters, abstention, as much as the exhaustion requirement, assists in "maintaining the balance between military authority and the power of federal courts." *Von Hoffburg v. Alexander,* 615 F.2d 633, 637 (5th Cir. 1980). "Because the military constitutes a specialized community governed by a separate discipline from that of the civilian, orderly government requires that the judiciary scrupulously avoid interfering with legitimate Army matters." *Id. Accord Schlesinger,* 420 U.S. at 757.

1.

Abstention is particularly proper in this case. Lawrence retains an adequate remedy at law and will not suffer irreparable harm by having his case resolved in military tribunals. *See Younger,* 401 U.S. at 43-44.

Lawrence asserts that the military judicial system cannot grant him the relief that he seeks from this court – the freedom from activation to answer charges of wrongdoing – with "reasonable promptness and certainty." *Parisi v. Davidson,* 405 U.S. 34, 41 (1972). At oral argument, counsel for Lawrence acknowledged that whether Lawrence may be recalled to active duty pursuant to Articles 2 and 3 of the UCMJ, 10 U.S.C. §§ 802, 803, is before the currently pending court-martial. Embedded within

-8-

that issue is the factual question of whether Lawrence was discharged from the Marine Corps. Indeed, it appears to this court that *all* of the issues we are asked to resolve are also before the court-martial. Lawrence, however, contends that, unlike an injunction issued by this court enjoining the Marine Corps from recalling Lawrence to active duty pursuant to Articles 2 and 3 of the UCMJ, 10 U.S.C. §§ 802, 803, the currently convened court-martial cannot prevent Lawrence from being recalled pursuant to Articles 2 and 3 at a later date.

Courts-martial come into existence only upon the referral of specific charges. *United States v. Boudreaux,* 35 M.J. 291, 293 (C.M.A. 1992). They may thus adjudicate only those charges that are before them. Military appellate courts, in turn, are limited to reviewing certain court-martial convictions. 10 U.S.C. § 866-67. The Court of Military Appeals, to whom Lawrence appealed for an extraordinary writ, is similarly limited by the All Writs Act which empowers courts to issue only those writs "necessary or appropriate in aid of their respective jurisdictions...". 28 U.S.C. § 1651. Lawrence contends that because the Marine Corps have yet to prefer[9] all of the charges stemming from his October

_____

[9]The Marine Corps, instead of, or prior to preferring charges to a court-martial, may recall Lawrence to active duty (1) for non-judicial punishment under Article 15 of the UCMJ, 10 U.S.C. § 815, or (2) to participate in another Article 32 investigation, 10 U.S.C. § 832. All such recalls, however, as with court-martial proceedings, would be pursuant to Article 2(d)(1).

2001 activation period, the pending court-martial proceedings will be unable to relieve him from being recalled to active duty pursuant to Articles 2 and 3, 10 U.S.C. §§ 802, 803, once again.

We do not find Lawrence's argument persuasive.  The court-martial currently convened will make a finding as to whether Lawrence has been discharged, and will then rule on whether he may be recalled pursuant to Articles 2 and 3.  10 U.S.C. §§ 802, 803.  The court-martial's decision will be appealed to the Navy-Marine Corps Court of Criminal Appeals.[10]  Alternatively, the Navy-Marine Corps Court of Criminal Appeals will have already ruled on the issue in the course of considering Lawrence's request for an extraordinary writ.  Lawrence's claim may then reach the United States Court of Appeals for the Armed Forces, whose decision may be reviewed by a writ of certiorari by the Supreme Court.  10 U.S.C. § 867a.  At some point, a final decision will be reached, and this decision will become binding precedent.  *United States v. Nelson,* 52 M.J. 516, 525 (N-M. Ct.

---

[10]Court of Criminal Appeals jurisdiction is mandatory where (1) there is a sentence of death, dismissal of an officer, cadet, or midshipman, dishonorable or bad-conduct discharge of any servicemember, or imprisonment of a servicemember for one year or more and (2) the right to appellate review has not been waived or an appeal has not been withdrawn.  10 U.S.C. § 866.  The court's scope of review is unusually broad, as the judges are permitted to "weigh the evidence, judge the credibility of witnesses...determine uncontroverted questions of fact" and decide any questions of law raised by the record.  *Id.*  Each court-martial for which review by a military court is unavailable is examined in the office of the judge advocate general, where the findings, sentence, or both, may be modified or set aside. 10 U.S.C. § 869.

Crim. App. 1999). *See, e.g., United States v. Morris,* 54 M.J. 898, 904 (N-M. Ct. Crim. App. 2001).

The precedents that will be created by the charges currently making their way through the military tribunals will govern the Marine Corps in any future attempts to recall Lawrence pursuant to Articles 2 and 3 of the UCMJ. 10 U.S.C. §§ 802, 803. We are thus unable to agree with Lawrence that the current military proceedings are incapable of ensuring that he will not be recalled in the future.

We also find that Lawrence will not suffer irreparable harm if we decline to exercise equitable jurisdiction. *See Younger,* 401 U.S. at 43. Lawrence claims that he suffers economically when called to active duty, and is forced to submit to limitations upon his liberty.[11] These harms, however, do not satisfy the standard set forth by the Supreme Court. "When a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system, the federal district courts must refrain from intervention." *McLucus v. DeChamplain,* 421 U.S. 21, 33 (1975)(citing *Schlesinger,* 420 U.S. at 758). The harms

---

[11]Lawrence claims that he is subject to the repetitive harm of being recalled to active duty to defend against, or receive non-judicial punishment for, every new charge brought against him. If Lawrence is not subject to the jurisdiction of Articles 2 and 3 of the UCMJ, as he claims, this is unlikely to occur after a binding ruling to that affect is made by the military courts. *See* discussion *infra.*

claimed by Lawrence are identical to those experienced by all servicemen called to answer charges of wrongdoing in the military courts.  10 U.S.C. § 802.

2.

Before applying *Younger,* we must further consider whether a line of cases that began with *Toth v. Quarles,* and held that civilians are not subject to military jurisdiction, bars its application.  350 U.S. 11 (1955); *See also Younger,* 401 U.S. 37. In *Toth*, civilian ex-soldiers raised a constitutional challenge to the exercise of military jurisdiction over them.  *Id.* at 13. The Supreme Court held that Article I of the Constitution did not permit Congress to extend the jurisdiction of military courts to civilian ex-soldiers who had severed their relationship with the military.  *Id*. at 17.  *Accord Reid v. Covert,* 354 U.S. 1 (1957); *McElroy v. United States ex rel. Guagliardo,* 361 U.S. 281 (1960).

The important distinction between *Toth* and the case at bar is that Toth's civilian status was never at issue.  Here, the threshold question is whether Lawrence was discharged on June 2, 2001, and is thus not subject to the jurisdiction of the UCMJ, or whether he was only released from active duty on that day, and thus remains a member of the Reserves, subject to the jurisdiction of the UCMJ.  This is a question that we are comfortable having the military courts address first, for the same reasons that we gave in *Wickham v. Hall,* 706 F.2d 713, 717

-12-

(5th Cir. 1983), which applied the abstention doctrine to permit the military courts to make the initial determination as to whether petitioner had obtained her discharge fraudulently, and was thus susceptible to military jurisdiction.

We permit many tribunals to make an initial determination regarding the scope of their jurisdiction.[12] We trust that the military courts are equally up to the task of considering Lawrence's claims fully and fairly.[13] Courts-martial are just as obligated to protect the individual's constitutional rights as state and federal courts. *Burns v. Wilson,* 346 U.S. 137, 142 (1953); *Wickham,* 706 F.2d at 717; *In re Kelly,* 401 F.2d 211, 213 (5th Cir. 1968). Most of the significant constitutional rights available to the defendant in a civil proceeding are also available to the accused in a court-martial. *Wickham,* 706 F.2d

---

[12]District courts and Tax Courts are empowered to decide the merits of a claim in order to determine whether jurisdiction exists. *Wickham,* 706 F.2d at 718; *Treaty Pines Investment Partnership v. CIR,* 967 F.2d 206, 210 (5th Cir. 1992). The Supreme Court has held that the federal courts should abstain from adjudicating a case while an Indian tribal court determines whether it has jurisdiction in a matter. *Iowa Mutual Ins. Co. V. LaPlante,* 480 U.S. 9, 16 (1987). And this Circuit has permitted the Interstate Commerce Commission, Federal Communications Commission, and the Federal Energy Regulatory Commission, to each determine the extent of its jurisdiction. *See Merchants Fast Motor Lines, Inc. v. ICC,* 5 F.3d 911, 922 (5th Cir. 1993); *Wickham,* 706 F.2d at 718 n.6; *Carter v. American Tel. & Tel. Co.,* 365 F.2d 486 (5th Cir. 1966).

[13]Courts-martial face challenges to their jurisdiction often, and have upheld the claims and dismissed the charges when appropriate. *Murphy v. Garrett,* 729 F. Supp. 461, 470 (W.D. Pa. 1990).

at 717 & n.5.  Moreover, the present military justice system provides for appeal to the Court of Military Appeals, which consists of civilian judges free from military influence, *Schlesinger,* 420 U.S. at 757, and whose decisions may be appealed to the United States Supreme Court.  10 U.S.C. § 867(h)(1).

Abstention is particularly appropriate in this case because an individual's status is a question of fact which the military courts are more intimately familiar with than the civil courts.  Whether Lawrence was discharged depends largely upon the interpretation of military forms and standard operating procedures with which we are comparatively less well-versed.  In such matters it is proper to defer to the military courts.  *Schlesinger v. Councilman,* 420 U.S. 738, 756 (1975); *Wickham,* 706 F.2d at 717-18.

Finally, if Lawrence is convicted by court-martial, he may collaterally attack the conviction in federal court through petition for the writ of habeas corpus.  Such writs have "long been recognized as the appropriate remedy for servicemen who claim to be unlawfully retained in the armed forces."  *Parisi v. Davidson,* 405 U.S. 34, 39 (1972).  In a habeas action, federal courts stand willing to review issues of jurisdiction, allegations of substantial constitutional violations, and claims that exceptional circumstances resulted in a fundamental miscarriage of justice.  *Calley v. Callaway,* 519 F.2d 184, 203 (5th Cir. 1975).  *See also Burns v. Wilson,* 346 U.S. 137

-14-

(1953)(holding that court-martial convictions alleged to involve errors of constitutional proportions are subject to court review).

3.

In abstaining from exercising equitable jurisdiction in this case, we take advantage of the court-martial's comparative expertise, allow it to create a complete record, and offer the military tribunals the opportunity to correct their own mistakes on appeal. *Schlesinger,* 420 U.S. at 756. "The rule ensures that whatever [federal] judicial review is available will be informed and narrowed by the agencies' own decisions." *Id.* at 756-57 (explaining the benefits of the exhaustion requirement and holding that they apply equally in the abstention context). *Accord Davis v. Marsh,* 876 F.2d 1446, 1449 (9th Cir. 1989). The application of *Younger* in this case also promotes judicial efficiency and conservation of resources by avoiding duplicative proceedings. The need for federal intervention may be obviated entirely simply by allowing the military institutions, both judicial and administrative, to run their course. *Id.*

III.

For the foregoing reasons, we find that the district court erred in adjudicating appellant's claims. As the doctrine of *Younger v. Harris,* 401 U.S. 27, compels us to abstain from ruling upon Lawrence's request for injunctive relief, the judgment of the district court is VACATED, and the case DISMISSED without

prejudice.