PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TIMOTHY HENNIS,

        *Petitioner-Appellant,*

        v.

FRANK HEMLICK; PATRICK PARRISH,
Colonel; LLOYD J. AUSTIN, III,
General; JOHN MCHUGH,
Honorable,

        *Respondents-Appellees.*

No. 10-6400

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(5:09-hc-02169-BO)

Argued: October 26, 2011

Decided: January 17, 2012

Before KING, GREGORY, and WYNN, Circuit Judges.

Affirmed in part; vacated and remanded in part by published
opinion. Judge Wynn wrote the opinion, in which Judge King
and Judge Gregory concurred.

**COUNSEL**

**ARGUED:** Eric Jonathan Allen, Columbus, Ohio, for Appellant. Seth Morgan Wood, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellees. **ON BRIEF:** George E. B. Holding, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellees.

---

**OPINION**

WYNN, Circuit Judge:

In *Schlesinger v. Councilman*, 420 U.S. 738 (1975), the Supreme Court held that principles of comity, respect for the expertise of military judges, and judicial economy weigh against federal court intervention in pending court-martial proceedings and in favor of requiring exhaustion of all available remedies within the military justice system before a federal court's collateral review ("*Councilman* abstention").

Timothy Hennis appeals the district court's decision to abstain, on the basis of *Councilman*, and dismiss without prejudice Hennis's petition for a writ of habeas corpus challenging the United States Army's ("Army") exercise of court-martial jurisdiction over him. Hennis asserts that the district court abused its discretion in its application of *Councilman* abstention because, among other things, the extraordinary circumstances of his case justify equitable intervention by a federal court. We disagree and, therefore, affirm.

I.

The factual and procedural history in this matter stretches over more than two decades. Because much of this history is

not particularly relevant to our disposition, we provide only a brief summary below.

### A.

On July 4, 1986, while serving as an enlisted Army soldier stationed at Fort Bragg, North Carolina, Hennis was convicted in North Carolina Superior Court on one count of rape and three counts of premeditated murder, and, thereafter, sentenced to death. On October 6, 1988, the Supreme Court of North Carolina reversed his conviction and ordered a new trial. *See State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988).

On April 19, 1989, at retrial, Hennis was acquitted of all charges. Thereafter, Hennis resumed his enlisted service in the Army. Pertinent to his contentions in this matter, it is undisputed that Hennis was issued a discharge from the Army on June 12, 1989 and reenlisted in the Army one day later, on June 13, 1989. Hennis retired from the Army on July 13, 2004.

In 2006, a cold case review, conducted by the North Carolina State Bureau of Investigation, revealed that preserved DNA evidence, obtained from a vaginal swab of the victim that Hennis had been accused of raping and murdering in connection with his 1986 and 1989 trials, matched the DNA profile of Hennis. In response to that revelation, on September 14, 2006, the Army recalled Hennis from retired status to active duty to face court-martial charges for triple murder.

### B.

On December 21, 2007, before commencement of his court-martial, Hennis filed a motion before the military trial court seeking a dismissal of all military charges, arguing that the Army lacked jurisdiction over him. On April 28, 2008, the military trial court denied Hennis's motion to dismiss.

Thereafter, on May 15, 2008, pursuant to the All Writs Act, 28 U.S.C. § 1651, Hennis filed interlocutory petitions for a writ of mandamus, writ of habeas corpus, and writ of prohibition with the Army Court of Criminal Appeals. Hennis's petitions asserted jurisdictional challenges to the Army's court-martial authority and requested enjoinment of the court-martial proceedings. On May 19, 2008, the Army Court of Criminal Appeals issued an order staying the court-martial proceedings, but on June 25, 2008, it denied Hennis's petitions.

On July 15, 2008, Hennis submitted a writ-appeal petition to the military's highest court, the Court of Appeals for the Armed Forces (formerly known as the United States Court of Military Appeals).[1] On September 26, 2008, the Court of Appeals for the Armed Forces denied Hennis's petition without prejudice to seek review of his claims, including his challenges to the Army's jurisdiction, within the military justice system's appellate review process afforded by 10 U.S.C. §§ 866, 867. On October 1, 2008, the Army Court of Criminal Appeals lifted the stay of Hennis's court-martial proceedings.

## C.

On December 28, 2009, Hennis initiated this matter by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Eastern District of North Carolina. Hennis argued that his discharge from the Army (i.e., his "break in service" between June 12, 1989 and June 13, 1989) deprived the Army of jurisdiction to court-martial him for conduct that occurred before June 13, 1989. Hennis argued that the Supreme Court's deci-

---

[1]This change in name was effective October 5, 1994, by Pub. L. No. 103-337, § 924, 108 Stat. 2831. In this opinion, for purposes of clarity and consistency, we refer to the military's highest court as the Court of Appeals for the Armed Forces, irrespective of the issue date of the decisions referenced.

sion in *Hirshberg v. Cooke*, 336 U.S. 210 (1949), was dispositive on the issue of the Army's lack of jurisdiction.

In *Hirshberg*, the Supreme Court, recognizing long-standing jurisdictional interpretations of the Army and Navy, stated that:

> Except in cases of offenses in violation of Article 14 of the Articles for the Government of the Navy, there is no authority of law giving jurisdiction to a court-martial to try an enlisted man for an offense committed in a prior enlistment from which he has an honorable discharge, regardless of the fact that he has subsequently reenlisted in the naval service and was serving under such reenlistment at the time the jurisdiction of the court was asserted.

*Id.* at 217 (internal quotation marks and citation omitted). In essence, the rule recognized in *Hirshberg* is that once a service member is discharged, that service member cannot be brought to a court-martial for any crimes that occurred before the discharge ("*Hirshberg* Rule"). Although the contours of this rule have since changed,[2] it is undisputed that the *Hirshberg* Rule applied to Hennis and the Army in June 1989.

On January 28, 2010, the Army moved to dismiss Hennis's petition for a writ of habeas corpus or, in the alternative, for summary judgment. In support of its motion, the Army cited, among other decisions, the decision by the Court of Appeals for the Armed Forces in *United States v. Clardy*, 13 M.J. 308 (C.M.A. 1982), which held that "where a servicemember is discharged prior to the expiration of his [service contract ("ETS Date")] for the specific purpose of immediate reenlist-

---

[2]For criminal offenses that occur after October 23, 1992, the military's jurisdiction is not affected by a "break in service" if the accused service member has a status subject to the Uniform Code of Military Justice ("UCMJ"). *See* 10 U.S.C. § 803(a).

ment, . . . he can be tried for offenses committed in the earlier enlistment." *Id.* at 310 (footnote omitted) ("*Clardy* Exception");[3] *see also Willenbring v. United States*, 559 F.3d 225, 236 (4th Cir.) (stating that "[t]he *Clardy* case reinforced the long-standing military tradition that, when an enlisted servicemember is discharged in order to reenlist before the expiration of his service, military jurisdiction continues, when there is no hiatus between the two enlistments" (internal quotation marks and citations omitted)), *cert. denied*, 130 S.Ct. 117 (2009).

Under the terms of the *Clardy* Exception, "a 'short-term discharge'–*i.e.*, a discharge given to a servicemember even before he completes his obligated term of service," *Clardy*, 13 M.J. at 310 n.4, does not deprive the military of jurisdiction because the service member never enters "civil status" and, consequently, never has a "break in service" for purposes of the *Hirshberg* Rule.

Critically, a service member's ETS Date must generally remain unlapsed at the time of discharge for the *Clardy* Exception to apply to the *Hirshberg* Rule. If the ETS Date has already lapsed at the time of discharge, the *Clardy* Exception does not apply, and the military loses jurisdiction for conduct that occurred before the discharge. *See Clardy*, 13 M.J. at 310 (noting that "[i]f . . . the servicemember had received a discharge after he had completed his actual, obligated, term of service, or had received any other discharge that unconditionally released him from the service . . . court-martial jurisdic-

---

[3]Decisions of the Army Court of Criminal Appeals and Court of Appeals for the Armed Forces do not bind federal courts considering similar questions. *See, e.g.*, *United States v. Green*, 654 F.3d 637, 648 (6th Cir. 2011), *petition for cert. filed*, (Nov. 8, 2011) (No. 11-7511). Nonetheless, and particularly where the matter to be considered relates to the interpretation of a military regulation or duty, federal courts often find decisions from the military courts persuasive. *See, e.g.*, *Moore v. United States*, 956 F.2d 1172, 1992 WL 18717, at *2 (9th Cir. 1992) (unpublished) (noting that, though "not binding upon us, we take guidance from decisions of" the highest military appellate courts (citation omitted)).

tion [would] ha[ve] been permanently lost over offenses committed prior to such discharge; this was true even though the person later might have reenlisted" (footnote and citations omitted)); *see also Hirshberg*, 336 U.S. at 217.

Here, based on the *Clardy* Exception to the *Hirshberg* Rule, the Army argued that it never lost jurisdiction because, among other reasons, Hennis executed a reenlistment contract on June 1, 1989 confirming that: (1) Hennis's discharge on June 12, 1989 was for the purpose of reenlistment on June 13, 1989; and (2) Hennis's ETS Date (i.e., date that his previous enlistment was scheduled to end) would not have lapsed until June 17, 1989. By contrast, Hennis argued that, on several alternative grounds, his ETS Date lapsed before his June 12, 1989 discharge. Thus, there was (and remains) an open factual dispute between the parties regarding the date on which Hennis's previous term of enlistment was to end.

D.

The district court, however, did not reach the merits of this matter because it determined that Hennis's petition for a writ of habeas corpus should be dismissed on the basis of the abstention principles set forth in *Councilman*, 420 U.S. 738. In *Councilman*, the Supreme Court held that "when a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system, the federal district courts must refrain from intervention, by way of injunction or otherwise." *Id.* at 758.

On March 16, 2010, the district court dismissed Hennis's petition for a writ of habeas corpus without prejudice. The district court concluded that "[a]ttempting to resolve [Hennis's jurisdictional challenges] would be inappropriate at this time with a court martial in progress. . . . [T]his court, like that in *Councilman*, discerns nothing that outweighs the strong considerations favoring exhaustion of remedies or that

warrants intruding on the integrity of the military court processes." J.A. 813 (internal quotation marks and citation omitted). Hennis appealed, and he also filed with this Court a motion for injunctive relief, seeking a stay of his court-martial proceedings pending the resolution of his appeal. On April 1, 2010, this Court denied Hennis's motion for injunctive relief.[4]

Notably, Hennis's petition for a writ of habeas corpus is not a collateral attack on his military conviction or death sentence, since, at the time of his petition to the district court, there was no conviction or death sentence to attack. Instead, Hennis's petition is a collateral attack upon the Army's jurisdiction to convene the court-martial and the refusal of the military trial court to dismiss the charges. Hennis challenges in this appeal the decision of the district court to abstain from considering the merits of his jurisdictional challenge on the basis of *Councilman*.

## II.

## A.

This Court reviews a district court's decision to abstain for abuse of discretion. *See, e.g.*, *Nivens v. Gilchrist*, 444 F.3d 237, 240-41 (4th Cir. 2006) (reviewing for abuse of discretion the district court's decision to abstain under *Younger v. Harris*, 401 U.S. 37 (1971))[5]; *Richmond, Fredericksburg & Poto-*

---

[4]Following his court-martial, Hennis was found guilty on April 8, 2010, and subsequently sentenced to death.

[5]*Younger*, 401 U.S. 37, is the seminal abstention case, which, although initially conceived in the context of preventing federal court intervention into pending state court criminal proceedings ("*Younger* abstention"), has since been extended by the Supreme Court and broadly applied to prevent, subject to narrow exceptions, federal court intervention into state civil and administrative proceedings. *See, e.g.*, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) (state civil proceedings); *Ohio Civil Rights Comm. v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) (state administrative proceedings). In *Councilman*, 420 U.S. 738, and as further discussed herein, the Supreme Court extended *Younger* abstention to restrict federal court intervention into on-going court-martial proceedings.

*mac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (same). A district court abuses its discretion whenever "its decision is guided by erroneous legal principles." *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (internal quotation marks and citation omitted).

B.

Initially, Hennis asserts that the district court abused its discretion by treating *Councilman* abstention as mandatory rather than discretionary. *Cf. Hamdan v. Rumsfeld*, 548 U.S. 557, 584-90 (2006) (declining to apply *Councilman* abstention where petitioner was not a service member); *Councilman*, 420 U.S. at 761 (noting, in dicta, that "[w]e have no occasion to attempt to define those circumstances, if any, in which equitable intervention into pending court-martial proceedings might be justified"); *New v. Cohen*, 129 F.3d 639, 644-45 (D.C. Cir. 1997) (discussing two exceptions to *Councilman* abstention: one for civilians and other persons indisputably not service members; and one for service members who have exhausted all available administrative remedies for claims otherwise non-judicable in the military justice system). Our review of the district court's order reveals no such error.

To be sure, we need not, and therefore do not, decide whether *Councilman* abstention is a mandatory doctrine subject to exceptions or a discretionary doctrine. The procedural posture and holding of *Councilman* suggest that abstention is a mandatory doctrine subject to exceptions. 420 U.S. at 758 (reversing the district court's decision to intervene, holding that "federal district courts must refrain from intervention, by way of injunction or otherwise[ ]" into pending court-martial proceedings "when a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system[ ]"). On the other hand, the standard of review (i.e., abuse of discretion) applied by a federal appellate court when considering a federal district court's abstention decision suggests that absten-

tion determinations are committed to the sound discretion of the trial court. *See, e.g.*, *Nivens*, 444 F.3d at 240-241.

Here, even if we assume that *Councilman* abstention is discretionary, the record reflects that the district court engaged in some weighing and balancing of considerations identified in *Councilman* favoring and disfavoring federal court intervention into pending military proceedings. The district court discussed the Supreme Court's decisions to intervene rather than abstain in *Hamdan*, 548 U.S. 557, and *Toth v. Quarles*, 350 U.S. 11 (1955), but, nonetheless, concluded that Hennis's "status does not present the unique circumstances of *Hamdan* or *Toth* that mandate [federal court] intervention [into] an ongoing court martial."[6] J.A. 813. In the end, the district court held that "this court . . . discerns nothing that outweighs the strong considerations favoring exhaustion of remedies or that warrants intruding on the integrity of the military court pro-

---

[6]Hennis's jurisdictional challenge is distinguishable from the jurisdictional challenge made by the petitioner in *Hamdan*, 548 U.S. 557. In *Hamdan*, the Supreme Court recognized that "*Councilman* distinguished service personnel from civilians[ ]" because the jurisdictional "challenges [of civilians] to ongoing military proceedings are cognizable in federal court." *Id.* at 586 n.16 (citing *Toth*, 350 U.S. 11); *see also New*, 129 F.3d at 644 (noting that in all cases that have embraced a jurisdictional exception to *Councilman*'s exhaustion requirement, "it has been undisputed that the persons . . . either never had been, or no longer were, in the military"). Although Hennis's jurisdictional challenge has some features analogous to the cognizable jurisdictional challenge raised in *Hamdan* (e.g., it is based on a determination of whether Hennis obtained a "civilian status" between his June 12, 1989, discharge and his June 13, 1989 reenlistment), Hennis's jurisdictional challenge is materially distinguished from the petitioner's in *Hamdan* because Hennis indisputably had a military status in 2006, which subjected Hennis to the Army's jurisdiction under the UCMJ and authorized the Army to recall Hennis to active duty. *See* 10 U.S.C. § 802(a)(4) (providing that retired members of the Army entitled to pay are subject to the UCMJ). As discussed herein, the determination of whether Hennis's challenge to the Army's jurisdiction has legs requires resolution of mixed questions of fact, grounded in military procedures and timelines, and law, grounded in military precedents such as the *Clardy* Exception to the *Hirshberg* Rule.

cesses." J.A. 813 (internal quotation marks and citation omitted). Because the district court engaged in an analysis that weighed and balanced considerations in favor of and against federal court intervention, we cannot agree with Hennis's contention that the district court abused its discretion by erroneously treating *Councilman* abstention as mandatory rather than discretionary.

In the alternative, even if we assume that *Councilman* abstention is indeed a mandatory doctrine, the district court's engaging in discretionary weighing and balancing would amount to nothing more than harmless error because the district court abstained and dismissed the matter. *See* Fed. R. Civ. P. 61 ("[T]he court must disregard all errors and defects that do not affect any party's substantial rights."); 28 U.S.C. § 2111 ("On the hearing of any appeal . . . the court shall give judgment . . . without regard to errors or defects which do not affect the substantial rights of the parties.").

### C.

On appeal, Hennis argues that, for various reasons, the district court abused its discretion in applying *Councilman* abstention because *Councilman*'s comity rationale for abstention is not implicated by his jurisdictional challenge. We disagree.

### 1.

"*Councilman* identifies two considerations of comity that together favor abstention pending completion of ongoing court-martial proceedings against service personnel." *Hamdan*, 548 U.S. at 586. "While the peculiar demands of federalism [that underlie *Younger* abstention in the context of pending state court criminal proceedings] are not implicated" by federal court intervention into military proceedings, the Supreme Court stated in *Councilman* that "th[is] deficiency is

supplied by factors equally compelling[ ]" to support a comity rationale. *Councilman*, 420 U.S. at 757.

The first consideration identified in *Councilman* arises from the unique role of the military in preparing for and fighting in wars, which requires "the military [to] insist upon a respect for duty and a discipline without counterpart in civilian life." *Id.* Hence, "the efficient operation[s] of the Armed Forces are best served if the military justice system acts without regular interference from civilian courts." *Hamdan*, 548 U.S. at 586 (citation omitted). A central feature of this "military discipline" consideration is that "[t]he military is a specialized society separate from civilian society with laws and traditions of its own developed during its long history." *Councilman*, 420 U.S. at 757 (internal quotation marks, alterations, and citation omitted). In light of the military's history and specialized society, comity further "ensures that whatever [federal court] review is available [after all available military remedies are exhausted] will be informed and narrowed by the [military's] own decisions[,]" which "avoids duplicative proceedings" and may "obviate the need for [federal court] intervention." *Id.* at 756-757.

The second consideration identified in *Councilman* arises from the respect that federal courts should have for "the balance that Congress struck between military preparedness and fairness to individual service members when it created an integrated system of military courts and review procedures, a critical element of which is the [Court of Appeals for the Armed Forces] consisting of civilian judges completely removed from all military influence or persuasion." *Hamdan*, 548 U.S. at 586 (internal quotation marks, alterations, and citations omitted); *see also Councilman*, 420 U.S. at 757. Indeed, "abstention in the face of ongoing court-martial proceedings is justified by our expectation that the military court system established by Congress—with its substantial procedural protections and provision for appellate review by independent civilian judges—will vindicate servicemen's

constitutional rights[.]" *Hamdan*, 548 U.S. at 586 (internal quotation marks and citation omitted).

Thus, "federal courts are not at liberty to presume that the decision of the [military courts] would be otherwise than is required by the fundamental law of the land." *Councilman*, 420 U.S. at 756 (internal quotation marks, alterations, and citations omitted). Consequently, comity generally requires that a service member first exhaust all available military remedies before seeking federal court intervention into pending court-martial proceedings. *See, e.g.*, *New*, 129 F.3d at 643 ("In connection with court-martial proceedings, the exhaustion requirement [articulated in *Councilman*] is particularly important[.]").

2.

Hennis argues that he exhausted all available military remedies prior to his court-martial and, because the comity rationale ceased to exist upon his exhaustion of such remedies, the district court abused its discretion in abstaining under *Councilman*. Hennis's argument is premised on limiting the construction of the phrase "all available military remedies" to the avenues for relief that Hennis pursued with his interlocutory extraordinary petitions filed with the Army Court of Criminal Appeals on May 15, 2008, and with the Court of Appeals for the Armed Forces on July 15, 2008. However, "exhaustion applies as long as there is an available, unused remedy which may result in relief." *Dooley v. Plogar*, 491 F.2d 608, 614 (4th Cir. 1974).[7]

---

[7]This is not to say that a similarly situated petitioner would be required to exhaust all available military remedies under the extraordinary circumstances of, for example, bad faith prosecution, harassment, or where other extraordinary circumstances warrant federal court intervention before exhaustion. *See, e.g.*, *Younger*, 401 U.S. at 45, 53-54 (discussing, among other things, the scope of the extraordinary circumstances "where the danger of irreparable loss is both great and immediate" justifying federal court intervention into pending state court criminal proceedings). But this is not such a case, as discussed below.

Here, Hennis has not exhausted his available avenues for relief within the military justice system. At each stage of the appellate review process within the military justice system, Hennis may litigate his jurisdictional challenge. Notably, Hennis's petition to the Court of Appeals for the Armed Forces was dismissed without prejudice such that military courts may review his claims, including jurisdictional challenges, within the normal appellate process afforded by 10 U.S.C. §§ 866, 867.

Indeed, during oral argument on this matter, Hennis's counsel stated that Hennis had not even completed the process of arguing and resolving post-trial motions with the court-martial's convening authority. *Cf*. 10 U.S.C. § 860 (setting out the process and scope of review undertaken by the "convening authority" of court-martials). The convening authority may entertain Hennis's jurisdictional challenges, as well as other issues regarding the court-martial's findings and sentence, and may, among other things, set aside the guilty verdict or vacate the death sentence. *Id.*

Moreover, after post-trial motions are resolved by the convening authority, the Army Court of Criminal Appeals will review, on an automatic, mandatory basis, Hennis's guilty verdict and death sentence. *Id.* at § 866. Thereafter, the Court of Appeals for the Armed Forces will review, on an automatic, mandatory basis, Hennis's guilty verdict and death sentence. *Id.* at § 867. After review by the convening authority, the Army Court of Criminal Appeals, and the Court of Appeals for the Armed Forces, Hennis may petition for certiorari with the United States Supreme Court to review his guilty verdict and death sentence. 28 U.S.C. § 1259.

Clearly, Hennis has not exhausted his opportunities within the military justice system to raise his jurisdictional challenge. The courts of the military justice system "are just as obligated to protect [Hennis's] constitutional rights as state and federal courts." *Lawrence v. McCarthy*, 344 F.3d 467, 473 (5th Cir.

2003) (citations omitted). After Hennis exhausts all available military remedies, if appropriate and assuming the United States Supreme Court has not granted a writ of certiorari and resolved Hennis's jurisdictional challenges on direct appeal, Hennis may then file a petition for a writ of habeas corpus seeking collateral review of his conviction and sentence in a federal court. *Cf. United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1730 (2011) (stating that "the doctrine of claim preclusion, or res judicata, [ ] bars repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits" (internal quotation marks and citation omitted)). When, and if, Hennis files such a petition for habeas relief, "federal courts stand willing to review issues of jurisdiction, allegations of substantial constitutional violations, and claims that exceptional circumstances resulted in a fundamental miscarriage of justice." *Lawrence*, 344 F.3d at 474 (citations omitted). We conclude, therefore, that Hennis has available remedies within the military justice system that he must exhaust before petitioning a federal district court for collateral review of his challenge to the Army's court-martial jurisdiction over him.

3.

Hennis next argues that the district court abused its discretion in applying *Councilman* abstention because the expertise of the military justice system is not necessary to resolve his jurisdictional challenge. Hennis contends that his challenge may instead be resolved on the basis of the *Hirshberg* Rule without input from, or review by, the military justice system. We disagree.

As we have already indicated, open factual and legal issues remain that are relevant to, among other things, whether the *Clardy* Exception to the *Hirshberg* Rule applies to Hennis. In short, the military argues that, under the terms of the *Clardy* Exception, Hennis's discharge on June 12, 1989 did not deprive the military of jurisdiction because Hennis was dis-

charged for the limited purpose of reenlistment on June 13, 1989. Although Hennis counters with various arguments as to why the *Clardy* Exception to the *Hirshberg* Rule is inapplicable, the military has, in turn, replied with various arguments favoring its application.

In our view, the open issues underscore why federal courts benefit from "looking to the special competence of [the military] in which Congress has reposed the duty to perform particular tasks . . . ." *Councilman*, 420 U.S. at 756. The military courts can then "develop the facts, [ ] apply the law in which they are peculiarly expert, and [ ] correct their own errors." *Id.* For example, whether Hennis was discharged for the limited purpose of reenlistment and whether Hennis's ETS Date lapsed before or after any such limited discharge "depends largely upon the interpretation of military forms and standard operating procedures with which we are comparatively less well-versed. In such matters it is proper to defer to the military courts." *Lawrence*, 344 F.3d at 473 (holding, in the context of jurisdictional arguments similar to those presented in the present case, that "[a]bstention is particularly appropriate . . . because an individual's status is a question of fact which the military courts are more intimately familiar with than the civil courts"). We therefore conclude that the district court did not abuse its discretion in applying *Councilman* abstention to permit, among other things, application of the military justice system's expertise to initially consider and resolve the mixed questions of fact and law comprising Hennis's jurisdictional challenge, grounded in military procedures and military precedents.

## D.

Hennis also argues that the district court's abstention was an abuse of discretion because the harms Hennis will suffer as a result of federal court abstention are extraordinary. Hennis notes that the Supreme Court stated in *Councilman* that "[w]e have no occasion to attempt to define those circum-

stances, if any, in which equitable intervention into pending court-martial proceedings might be justified." 420 U.S. at 761. According to Hennis, the circumstances of his case justify equitable intervention into pending court-martial proceedings. We disagree.

First, Hennis argues that his jurisdictional challenge implicates an extraordinary circumstance mandating federal court intervention because he has already endured five years of criminal proceedings since 2006 and "can expect a long appellate process. . . . [under] [c]onditions at the United States Disciplinary barracks [that] are Spartan at best." Appellant's Br. at 21-22. Hennis's argument appears to have been specifically addressed by the Supreme Court in *Councilman*, 420 U.S. 738.

In *Councilman*, which was decided in the context of a jurisdictional challenge, the Supreme Court expressly held that "[w]hen a serviceman charged with crimes by military authorities can show *no harm other than that attendant to resolution of his case* in the military court system, the federal district courts must refrain from intervention, by way of injunction or otherwise." 420 U.S. at 756 (emphasis added). The Supreme Court found it further relevant that the petitioner "was threatened with (no) injury other than that incidental to every criminal proceeding brought lawfully and in good faith." *Id.* at 754 (internal quotation marks and citation omitted). Although the Supreme Court recognized that "there is inevitable injury–often of serious proportions–incident to any criminal prosecution[,]" the Supreme Court nevertheless cautioned that "when the federal equity power is sought to be invoked against state criminal prosecutions, . . . certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, cannot by themselves be considered irreparable in the special legal sense of that term." *Id.* at 754-55 (internal quotation marks, alterations, and citations omitted).

Here, Hennis alleges no harm other than that attendant to the resolution of his case in the military justice system. Consequently, Hennis's jurisdictional challenge, standing alone, does not justify equitable intervention by federal courts into pending military proceedings under *Councilman*.

Second, Hennis argues that his case is "unparalleled in the annals of American jurisprudence" because "he is being sent to death row for a second time by a different sovereign[,]" which, according to Hennis, implicates an extraordinary circumstance mandating federal court intervention under *Councilman*. Appellant's Br. at 22. The legal precedents on this issue are undisputed and clear: The federal government, which includes the military, is regarded as a separate sovereign from the states; therefore, prosecution within the military justice system after a state court acquittal does not implicate double jeopardy concerns. *Bratkus v. Illinois*, 359 U.S. 121, 132-33 (1959) (noting that it is "unquestioned constitutional law that such successive prosecutions [in federal and then state court] would not violate the proscription of double jeopardy included in the Fifth Amendment"); *United States v. Stokes*, 12 M.J. 229, 231 (C.M.A. 1982) (holding that "trial by a court-martial is barred . . . only if the accused has already been tried in a court which derives its authority from the Federal Government"). It follows that Hennis's successive prosecution by the Army after an acquittal in state court does not, standing alone, justify equitable intervention by federal courts into pending military proceedings under *Councilman*.

Third, Hennis argues that "death is different" and that his death sentence implicates an extraordinary circumstance mandating federal court intervention under *Councilman*. Again, the legal precedents on this issue are clear: A petitioner pursuing habeas corpus relief in federal court in relation to a death penalty conviction must first exhaust all available remedies. *See, e.g.*, *Harrington v. Richter*, 131 S. Ct. 770, 780 (2011) (discussing this exhaustion requirement in 28 U.S.C. § 2254(d) of the Antiterrorism and Effective Death Penalty

Act ("AEDPA")); *see also Banks v. Dretke*, 540 U.S. 668, 690 (2004) (discussing same exhaustion rule pre-AEDPA). Likewise, it follows that Hennis's death sentence does not, standing alone, justify equitable intervention by federal courts into pending military proceedings under *Councilman*.

### III.

In sum, our review of the record, including the district court's order, reveals that the district court was well within its discretion in applying *Councilman* abstention and dismissing without prejudice Hennis's petition for a writ of habeas corpus. We remand, however, for correction of an error in the judgment because, although the district court applied *Councilman* abstention and dismissed Hennis's petition for a writ of habeas corpus without prejudice, the judgment erroneously indicates that the district court granted the Army's summary judgment motion on the merits. On remand, the judgment shall be amended to indicate simply dismissal without prejudice with no reference to summary judgment.

*AFFIRMED IN PART;*
*VACATED AND REMANDED IN PART*